# JOBSKI *v.* JOHNSON.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

1. Where in an interference in which a motion by one of the parties to amend his preliminary statement was denied by the lower tribunals of the Patent Office, the Commissioner in holding adversely to such party indicated that his ruling would have been the same even if the amended statement had been admitted, it cannot be said that such motion was granted by the Commissioner.

2. The question of priority in an interference case is one of fact, and where the Patent Office tribunals all agree upon it, their decision will not be disturbed by this court except for the most persuasive reasons. (Following *Bourn* v. *Hill*, 27 App. D. C. 291; *Flora* v. *Powrie*, 23 App. D. C. 195; and *Gammeter* v. *Thropp*, 42 App. D. C. 564.)

3. Test of a device which is a part of the means used in retaining an automobile tire on its rim, by bouncing upon the floor a wheel having the device and tire attached thereto, is not sufficient to demonstrate that the device would give the desired results when on a wheel supporting a car in motion. (Following *Henderson* v. *Gilpin*, 39 App. D. C. 428, and *Barclay* v. *Schuler*, 41 App. D. C. 250.)

4. What constitutes a reduction to practice is a matter the determination of which must largely depend upon the nature or purpose of the machine or device in the particular case, as well as the particular circumstances surrounding the alleged construction or use. (Following *Mason* v. *Hepburn*, 13 App. D. C. 86.)

No. 1116.  Patent Appeals.  Submitted November 14, 1917.  Decided January 7, 1918.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Jesse B. Fay* for the appellants.

*Mr. E. G. Siggers* for the appellee.

Mr. Chief Justice Smyth delivered the opinion of the Court:

The invention involved in this appeal relates to a tire-fastening devise, and the counts of the issue are five. The Examiner of Interferences, the Examiners in Chief, and the First Assistant Commissioner agreed in awarding priority to Frank P. Johnson as to counts 1 and 2, and to Richard S. Bryant as to counts 3, 4, and 5. Johnson is content with the award, but the administrators of Bryant are not.

In his preliminary statement, Johnson claimed conception in 1909 and reduction to practice of the device disclosed by counts 1 and 2 in August or September, 1911; while Bryant in his preliminary statement asserted that he conceived the invention in March, 1911, and reduced it to practice in 1912. Thus Johnson, according to his allegations, was ahead of Bryant, both as to conception and reduction to practice. Bryant waited until Johnson had completed his testimony in chief, and then moved to amend his preliminary statement so as to claim conception in September, 1910, and reduction to practice in the same month. The motion was denied by each of the three tribunals of the Patent Office, but the appellants do not assign the denial as error. On the final hearing they renewed, before each of the tribunals, a motion to amend. It was rejected by the two first, but granted, as they assert, by the last, the First Assistant Commissioner. And their argument in this court is upon that hypothesis. We think the record is against them. The Commissioner did not sustain the motion. In his decision, after relating the actions for the two lower tribunals on the renewed motion, he said: "If Bryant cannot be allowed to amend his preliminary statement, priority as to counts 1 and 2 are properly awarded to Johnson." He then reviewed the testimony offered by Bryant in support of the amended statement, and concludes thus: "Even if the amended statement be admitted, and it is held that the testimony establishes that exhibit No. 4 [the device in controversy] was made in September, 1910, Johnson was the first to conceive the invention and the first to reduce it to practice." This does not mean that he overruled the lower tribunals, reversed himself and granted the

motion, but, on the contrary, clearly indicates that he considered the matter only on the supposition that it was granted, which is quite another thing. Bryant then was confined to the dates of conception and reduction to practice set out in his original preliminary statement; that is, March, 1911, and January, 1912, respectively. The three Patent Office tribunals concurred in finding that Johnson conceived the invention in November, 1909, and reduced it to practice in August or September, 1911; hence that he was prior to Bryant in both respects. The question of priority thus decided was, of course, a question of fact; and where the Patent Office tribunals all agreed with respect to such a question, their decision will not be disturbed by this court, except for the most persuasive reasons. Speaking to a similar question, we have said: "Where three separate and distinct tribunals, consisting of five experienced men familiar with receiving and considering evidence in proceedings of this nature, agree in their conclusions, this court has repeatedly held that an appellant, in order to secure a reversal, must make out a very clear case of error." (*Bourn* v. *Hill,* 27 App. D. C. 291; see also *Flora* v. *Powrie,* 23 App. D. C. 195; *Gammeter* v. *Thropp,* 42 App. D. C. 568.) Under the doctrine of these cases, we find nothing in the record which would warrant us in interfering with the decisions of the Patent Office.

Even if we concede, which we do not, that the Commissioner on the final hearing sustained Bryant's motion to amend and properly considered the testimony produced in support of the amendment, we would be quite content with the conclusion reached by him that Johnson should prevail. Bryant failed utterly to show by sufficient competent evidence that he made the device described in the counts or reduced it to practice before Johnson did. The only test made by him of the device, which is a part of the means used in retaining an automobile tire on its rim, was, according to his own testimony, the bouncing upon the floor of a wheel having the tire and the device attached thereto. When it is considered what strain a device of this character would be subjected to while the machine of which it was a part swept along at a high rate of speed, the test described by Bryant must be regarded as negligible. What

constitutes a reduction to practice "is a matter the determination of which must largely depend upon the nature or purpose of the machine or device in the particular case, as well as the particular circumstances surrounding the alleged construction or use." (*Mason* v. *Hepburn,* 13 App. D. C. 86–89.) In *Henderson* v. *Gilpin,* 39 App. D. C. 428, this court said: "It is not enough, as contended by appellant, that these shop tests indicated the operation of the device would be successful. To constitute reduction to practice the test must amount to a demonstration in fact as contradistinguished from one in theory." *Barclay* v. *Schuler,* 41 App. D. C. 250–253, was a case in which the invention was a short portion of a garment stay formed by hand and was originally about 4 inches long. The record showed that it was tested by bending it back and forth across the thumb, and that this was the usual way of testing such devices by experts in the shop. It was never incased in a corset or subjected to the conditions of actual use. It was held that this was not enough "to demonstrate that a stay of this design would give the desired results when placed in a corset where its movement would be restrained by contact with the surrounding fabric." Paraphrasing this language, we may say of Bryant's test that it could not be held to demonstrate that the device would give the desired results when on a wheel supporting a car in motion. There is nothing in *Mason* v. *Hepburn,* supra, cited by appellants, which conflicts with the holdings of the foregoing cases. In that case it was remarked of a clip that it had been sufficiently reduced to practice because "it was demonstrably capable of producing the result sought to be accomplished, *viz.,* that of closing the magazine and clipping it to the barrel. As admitted by the examiners, 'the clip evidently performed its expected office.' " Bryant did not demonstrate in this case that this device was capable of producing the results sought to be accomplished, which was the secure holding of a rim in place on a wheel bearing an automobile in motion.

After his so-called test, Bryant says, he caused the device to be shipped from Columbus, Ohio, to Akron, same state. There it remained in a closet of his boarding house, in the box in

which it had been shipped, for upwards of twelve months. In the meantime he was working on similar devices, and filed at least two applications for patents, showing such devices. Why this, if he believed his first device was workable? Johnson, as we have seen, reduced his invention to practice about August, 1911, several months before Bryant removed his device from the box aforementioned. Therefore the only evidence of a reduction to practice by Bryant before Johnson is that with respect to what took place in Columbus, and that we have found to be entirely insufficient. Consequently, whether we regard the motion to amend the preliminary statement as overruled or sustained, the result must be the same.

The decision of the First Assistant Commissioner was right, and it is affirmed.                    *Affirmed.*