## JAMES v. STIMSON.
### Patent Appeal No. 2667.

Court of Customs and Patent Appeals.
April 27, 1931.

Joshua R. H. Potts, of Chicago, Ill., and T. Bertram Humphries, of Philadelphia, Pa., for appellant.

John H. Bruninga, of St. Louis, Mo., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

This is an appeal by the appellant from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences in awarding priority to the party Stimson. An interference was declared on June 12, 1926, between the patent of the appellant, dated September 1, 1925, No. 1,552,166, and the application of the appellee, serial No. 92,025, filed March 3, 1926.

The subject-matter of the interference is contained in one count, which reads as follows:

"In a highway danger signal the combination of two reflectors placed at right angles to each other and with their reflecting surfaces facing one another, one of the reflectors having a plane surface, the other being grooved, the grooves running at right angles to the plane reflector, and each groove being composed of two plane surfaces placed at right angles to one another."

The said patent to the appellant was issued on an application filed September 2,

494

1924, for improvements in highway danger reflectors, the scope of the invention being sufficiently shown by the facts hereinafter stated. The appellee, Stimson, filed his application for an improvement in highway signals, as has been stated, on March 3, 1926. In this application he states that the same is a continuation in part of application, serial No. 7164, filed February 5, 1925. The said last-named application went to patent on July 6, 1926. The disclosure and the claims in said patent are for a process of making reflecting glass for highway signals, and for a mold of the necessary character to make the same. No contention is made here that the appellee is not entitled to prosecute his present application as a continuation of said prior application, if the said prior disclosure is sufficient to read upon the count of the interference here.

One of the principal contentions in this matter arises from a motion of the party James to dissolve the interference herein on the grounds that the party Stimson could not make the count. This motion was decided adversely to James by the law examiner, the Examiner of Interferences, and by the Board of Appeals in its final decision on the merits. Appellant contends that the original patent No. 1,591,572, granted to the appellee on his application filed February 5, 1925, does not disclose the subject-matter of the interference count, and hence that the present application can be extended no further than the disclosures in said patent. Appellant contends, with much insistence, that his disclosure, as shown by his patent No. 1,552,166, shows a continuous plane reflecting surface with another reflector placed at right angles thereto, the latter being grooved, and consisting of two plane reflecting surfaces placed at right angles to one another and at right angles to said first-mentioned plane reflecting surface.

On the other hand, he insists that the Stimson disclosure shows a series of half cubes, the interior portions of said half cubes having reflecting surfaces, and that light reflected from such a series of half cubes will be reflected in a different manner than that which will result from the use of the single plane surface of appellant's disclosure. In connection with this, appellant goes into an exhaustive discussion of the laws of physics as regards reflected light, to demonstrate the correctness of his position.

■ The Board of Appeals held, and we think properly, that Stimson's disclosure in his patent No. 1,591,572 reads upon the count of the interference. The patent in question

was for a mold for making reflecting glass. The original molds are offered in evidence as Stimson's Exhibits J and AA, together with samples of glass made therefrom, some of which glass was used in the Moorlands sign, hereinafter referred to, and other pieces of which were used in a railroad crossing sign offered in evidence as Exhibit MM. Both these molds and the glass made therefrom, and offered in evidence, show along one or more sides thereof a continuous plane surface which, if appellant's contentions are correct, fully satisfy the requirements of the count, which must be read broadly. Stern et al. v. Schroeder et al., 36 F.(2d) 518, 17 C. C. P. A. 690.

It will be observed that the count of the interference is confusingly drawn. It is a copy of claim 1 of appellant's patent No. 1,-552,166. The count first recites that there are but two reflectors, with their surfaces facing one another, one of the reflectors being plane and the other being grooved; then, having recited subject-matter which would seem to be covered by a combination of but three reflecting surfaces, the count further proceeds with a statement: "The grooves running at right angles to the plane reflector." This latter statement seems to indicate that, instead of being two reflecting surfaces, one grooved and the other plane, there are at least four of such reflectors, otherwise there could be no grooves. In fact, we are satisfied, from an examination of the drawings and the specification in the James patent, as well as by an examination of his first models, James' Exhibits Nos. 1 and 3, that the inventor intended to have a multiplicity of these opposed reflecting surfaces. The glass which he finally manufactured commercially indicates the same thing.

It is argued that, if the party Stimson has any such continuous plane surface, it was accidental, and not intended or comprehended by Stimson. While this may not have been Stimson's primary design, his disclosure fully shows the necessary existence of such a continuous plane surface in his product. In his specification he calls attention to the fact that such a continuous plane surface will exist:

"* * * The outer rows of hexagonal elements along the sides of the box 35 are not surfaced with the three faces 20, 21, 22, but the elements of the bottom row (Figure 2) are given only one angularly cut face and those of the top row two angularly cut faces."

■ We find no error in the ruling of the Board of Appeals affirming the action of the

Examiner of Interferences in denying the motion to dissolve the interference.

The record testimony offered on behalf of the party Stimson is sufficient to establish, in our opinion, the facts alleged by him in his preliminary statement. The party Stimson testifies that he had been working upon the problem of a glass reflector for use in road signs and other articles, and that, on June 11, 1923, he conceived the idea involved in the count of the interference here, his conception at that time being that of a plate reflector, every unit of which should be a complete half cube; that on the same day he made a rough model of wood preliminary to plans for making a mold to carry out his invention. His conception on this date is amply corroborated by a diary kept by him, by other documentary evidence, by the testimony of his father and his brother, to whom he communicated the same, by the testimony of his attorney, to whom he made disclosure of it, and by others whose testimony is stipulated into the record. He made a drawing of his invention on or about June 25, 1923, and proceeded at once thereafter to procure the necessary materials and molds for carrying out his invention.

His testimony shows that a mold was completed and delivered to Stimson on July 10, 1923, from which, thereafter, numerous plates of glass with reflecting surfaces were made. This is corroborated by the proprietor of the machine works where the same was made, as well as by the mechanic who did the work. The witnesses Roach and Witherow testified that a full and complete disclosure of the invention was made to them in August, 1923, and that samples of the glass reflectors were shown to them at that time.

Some attempt was made by Stimson to test the reflective power of these glasses in the shop, but the testimony shows that full and complete tests were made of them on the public highway and otherwise in the fall of 1923. Highway signals were made up and placed in position along public highways in the early part of September, 1923, and signs were installed, thus made up, in Jefferson City, Mo., and Richmond, Ind., at about the same time.

Certain of the signs which were put up locally in St. Louis county, Mo., were tested by Stimson and others, by the use of the automobile headlights of passing automobiles, with spotlights and otherwise, at such distances as would show their availability for ordinary highway use.

In addition to this, in August, 1923, a large sign was erected by Stimson containing letters made from his reflecting glass and put up to advertise a real estate development known as "Moorlands." The sign was about 35 feet long, and the letters were each about 5 feet high. This sign was kept in service until after snowfall in the fall of 1923. A railway crossing sign was also made and put in use at about the same time. All of these signs were thoroughly tested, and proved satisfactory in every respect.

There is therefore no question from the record that Stimson made a complete reduction to practice of his invention, not later than August 10, 1923, when he erected the Moorlands sign.

The record made by the party James shows that in the month of April, 1923, James had a conference with one Edgar A. Miller, during which James disclosed to Miller, for the purpose of obtaining financial assistance, his idea of a highway danger reflector composed of a "plane surface and a surface composed of 90° grooves and these surfaces being placed at right angles to one another." James testifies that he had conceived the subject-matter of said conference in 1921; the idea being suggested to him by the reflection of the lights from his automobile headlights by the corner of a tin box lying along the highway. Miller corroborated James in this disclosure as of the date mentioned by James. At that time the party James' idea was incorporated in a tin model which is in evidence as James' Exhibit No. 1, which consists of a flat piece of tin plate to which is attached, at right angles thereto, a piece of tin plate in the form of three rectangular grooves, the side of each of said grooves being made by a fold of said tin plate. Between these upright grooves and the lower flat reflected surface was interposed a sheet of red celluloid. James relies to a large degree for his early date of conception upon this exhibit.

In August, 1923, James constructed a model of a reflector which is in evidence, and known as James' Exhibit No. 3, and which was used by him in demonstrating his idea. It consisted of a wooden frame containing therein an enlargement of the old tin model, Exhibit 1, but was constructed of silvered mirror plates of glass, and had four upright grooves instead of three, as in the original tin model. In the center of each groove was placed a piece of red glass. This model was, to some degree, broken up and lost, but was reconstructed and identified for the purposes of this interference proceeding.

James also constructed several other reflectors of nickel plated material in the fall

of 1923, according to his testimony, one of which, Exhibit No. 7, he states was "tried out in the house and on the highway." There is, however, no corroboration of this statement by the testimony of the other witnesses.

On August 13, 1923, James testifies that he demonstrated the use of his invention by means of Exhibit No. 3, and that members of his family and the witness Miller were present. It appears from the testimony that in making this demonstration the model reflector was placed on the back of a davenport, and that it was caused to be illuminated by an electric light chandelier in the ceiling, and sometimes by a flash-light, the demonstrator standing about 10 feet away from the reflector during the test. It is stated that the test was satisfactory. This test is corroborated and sufficiently shown by the record.

The witness Miller states that he saw a demonstration of the nickel plated reflectors, Exhibits Nos. 5 and 7, in the fall of 1923, in the cellar or basement of the party James' home. This test was conducted by placing the reflector at one end of the cellar, and with the aid of a mirror and a gas jet a light beam was projected onto the plane surface of the reflector. These nickel plated reflectors had strips of red celluloid inserted, so that the reflected light was red in color.

No other tests of any kind are shown by James' record of his device prior to Stimson's reduction to practice on August 10, 1923. In fact, the tests which were made, as last above stated, of Exhibits 5 and 7, may have been after August 10, 1923, so far as the record discloses.

We are of opinion that the Board of Appeals committed no error in holding that James had not shown reduction to practice prior to his constructive reduction to practice on the filing of his application for patent on September 2, 1924. There has been much discussion in the case as to what was necessary to constitute reduction to practice in this case. It is sufficient for us to observe that the parties here were both trying to perfect highway danger signals and light reflecting glass for similar purposes. It is quite apparent that a test of a highway danger signal to be used to catch and reflect the light from automobile headlights at night cannot be satisfactorily made except under actual working conditions. Such a test would be easy of accomplishment, and would be the natural and reasonable thing to do. To test such a device with a small contrivance made of tin plate, or of small mirrors contained in a temporary wooden frame by the light of a ceiling electric light, or by flash-light, in a room, at a distance of 10 feet or thereabouts, is not such a test as is required to prove that the device will work satisfactorily under actual working conditions. In the same way the tests claimed to have been made by James, in his cellar, were equally inefficient. The physical laws involved in the reflection of light from surfaces disposed as they were in James' device were well known long prior to his experiments, and nothing could be claimed as inventive in this line. If, however, in the adaptation of this known principle to actual conditions, something of invention had occurred, it was necessary that this be demonstrated by a test under such conditions as would show this to be true.

In Bennett v. Fitzgerald, 48 F.(2d) 917, 18 C. C. P. A. ——, we had occasion to comment somewhat upon the amount of proof required for reduction to practice in various cases, and it will not be necessary to repeat what was there said. This, in our opinion, is one of the cases where a test was required under actual working conditions. The cases in point are Jardine v. Hartog, 36 F.(2d) 606, 17 C. C. P. A. 764; Wickers v. McKee, 29 App. D. C. 4; Sherwood v. Drewson, 29 App. D. C. 161, 173; Malcom v. Richards, 47 App. D. C. 582; Van Auken, etc., v. Cummings, 49 F.(2d) 490, 18 C. C. P. A. ——.

We come to the conclusion, therefore, that the party Stimson, although being the last to conceive, reduced his invention to practice not later than August 10, 1923, and that the party James constructively reduced his invention to practice on September 2, 1924.

[4] Appellant was required to be diligent from the period immediately prior to appellee's reduction to practice to the time of filing his application, which was his constructive reduction to practice. Beidler v. Caps, 36 F.(2d) 122, 17 C. C. P. A. 703; Blunt v. Grace, 45 F.(2d) 140, 18 C. C. P. A. ——.

During the period above mentioned, appellant did nothing toward further reducing his invention to practice, except to make some variations of his design, such as James' Exhibits 5 and 7, out of nickel plated metal, and to exhibit the same to a few persons. No excuse is given for his failure to file an application sooner, nor is any reason suggested why this could not have been done. We are of opinion that his actions in this matter did not constitute such diligence as the law requires.

The decision of the Board of Appeals in awarding priority to the party Stimson is affirmed.

Affirmed.