## FINK v. HUMEL.
### Patent Appeal No. 3262.

Court of Customs and Patent Appeals.
April 16, 1934.

Charles S. Grindle, of Washington, D. C. (Frank J. Kent and Charles F. Chisholm, both of New York City, of counsel), for appellant.

Harry Cohen, of Washington, D. C. (Guido M. Sacerdote, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an interference proceeding in which an appeal was taken to this court from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority to the junior party Humel.

The subject-matter of the invention is a metal strip for use in laying terrazzo floors. Five counts appear to be involved, although only two were certified by the Patent Office for printing under rule XXVI of this court. The two counts so certified are illustrative and read as follows:

"Count 1. A strip for the purpose described having pocket forming portions projecting from the sides thereof with the edges of the pockets all in a single plane at right angles to the strip and spaced from one of the longitudinal edges of the strip.

"Count 2. A strip for the purpose described having segmentoconoidal portions struck out from the body of the strip and each having an arcuate edge portion free from the body of the strip whereby said portions form pockets open at one end, said arcuate edge portions all lying in a common plane at right angles to the body of the strip and spaced from the edge towards which the pockets face."

We deduce from the record that in constructing terrazzo floors a foundation of concrete, or the like, is first laid and permitted to harden. Upon this foundation there is spread, in semi-liquid form, a layer of suitable material such as mortar. This is sometimes referred to as the "screed" layer. While the mortar is fresh, lines are struck thereon to show where strips are to be inserted in order to form the floor design required by the architect's plans. After the mortar has hardened to the required consistency, the lines, as struck, are opened with a trowel and the strips inserted into the openings, being positioned so as to leave a portion of the strip above the level of the screed layer. The third or surfacing layer, usually composed of a mixture of marble chips and cement, is then imposed upon the screed, flush with the upper edges of the strips and the surface smoothed.

It seems formerly to have been the practice to use wooden strips which were withdrawn after the surfacing layer had reached the necessary consistency, and to fill the interstices left by their withdrawal with suitable material. The later practice—or at least one later practice—is to use thin and relatively flexible metal strips which are left in place and become an integral part of the floor.

It appears obvious that the laying of these strips, especially where they are to remain permanently in the floor, necessitates much skill and care. Their upper edges must necessarily be upon a perfect horizontal level in order to assure smoothness of the floor surface. It is equally obvious that there must be means for anchoring the strips rigidly and securely in the floor material, and the counts here at issue relate to a strip for meeting this latter requirement, the anchoring means being formed by the "pocket" features, arranged as described in the counts.

It is conceded that the disclosures of both parties support the counts. Fink is the senior party, his application having been filed June 3, 1927. The application of Humel was filed October 17, 1927. Fink took no testimony and relies upon his filing date for reduction to practice. Humel, in his preliminary statement, alleged conception as early as 1923, the completion of a full-size strip in January, 1924, and the installation of the invention in a building "on or about the latter part of June, 1927."

The sole question in the case is whether the device is of such a character as to have required a test and successful operation by Humel to establish a reduction to practice. If such be required priority must be awarded to Fink because Humel's preliminary statement confines him to a date not earlier than June 15, 1927, for actual use of the device, while Fink's filing date was June 3, 1927.

If, however, the device does not require an actual test, then Humel, having established satisfactorily that he, in fact, manufactured a strip responding to the counts at least a few months prior to Fink's filing date, is entitled to the award, since it is not thought, under the facts of this case, that such delay as there was in filing the Humel application indicated abandonment, nor does diligence, under the circumstances, become an issue. Sachs v. Wadsworth, 48 F.(2d) 928, 18 C. C. P. A. 1284; Buchanan v. Lademann, 54 F.(2d) 425, 19 C. C. P. A. 836.

Both the Examiner of Interferences and the Board of Appeals gave careful consideration to this question, and both agree in the holding that the device is not of a character which requires an actual test to demonstrate its adaptability to successful use.

There is on file as evidence an exhibit

(Humel's Exhibit 6) which is a strip representing the construction used in certain prior art. This exhibit shows horizontal flanges formed by cutting vertical slits in one edge of the strip, at opposite ends thereof, to about its center, and bending the portions so slitted to form flanges on opposite sides of the strip. In the use of these strips it seems that they are placed in the cut-out lines of the screed layer in such manner as that the horizontal flange members rest upon the screed layer, becoming fully anchored in place when the surface layer is superimposed.

In the device of the counts, "pockets" are formed to serve as the anchoring means. The strip is slit longitudinally near its center and the metal below the slit pressed out and shaped as described in detail in count 2, supra. The pressed-out portions are on opposite sides of the strip.

There seems to be a distinction in the manner of placing the strips illustrated by Humel's Exhibit 6 and that of placing those required by the counts, in that, in using the former, the anchoring means (the flanges) rest *upon* the screed layer, while, in using the latter, the anchoring means (the pockets) are pressed *into* the screed layer.

The structural differences between the prior art strip and the strip of the counts evidence their adaptability for use in the ways respectively described, and, as we view the case, it is the distinction in placing them which must be considered in determining whether an actual use test of the device by Humel was essential.

The Board of Appeals took due note of the distinction which has been described and, after considering appellant's arguments urging possibilities of failure with a strip of the new character, said: " * * * but we are unable to believe that one skilled in the art would have any difficulty in embedding the strip in the base and after the base had set in applying the surface layer and leveling it in a customary manner."

Notwithstanding our reluctance to disagree with concurring decisions of the tribunals of the Patent Office, to whose expert knowledge greatest deference is due, we feel constrained to do so in this case.

The evidence in the record satisfies us that the construction of terrazzo floors is an art requiring much skill and experience.

The strips required by the counts are not only to serve as guides in the laying of floors, but they are designed to be also a perma-nent part of such floors, and are designed to be used in a manner, in so far as their anchoring is concerned, different from any prior art cited, or of which Humel is shown to have had knowledge. They become bonded into a stratum of the floor structure different from the stratum into which the strips of the prior art became bonded.

One of the witnesses called on behalf of appellee was a Mr. Pasquale Galassi, whose business is that of contractor for laying terrazzo floors and who at one time personally laid such floors. His testimony evidences thorough familiarity with the art. His company was at one time engaged in manufacturing the horizontal flange strips illustrated by Humel's Exhibit 6. There seems to have been, at the time of taking Galassi's testimony, some business relationship between him and appellee which has led Fink's counsel to suggest that Galassi is the actual party in interest here instead of Humel. So far as this case is concerned, we do not regard that relationship as being of importance, but certain of the testimony of Galassi we regard as having a legitimate bearing upon the question before us.

In his testimony he stated, in substance, that a dividing strip suitable for commercial use must have anchorage and positioning means, and that there were other requisites which they should have, which he had learned from his experience of thirty years in the terrazzo business. The witness declined "under advice of counsel" to state what these were. We deduce that he regarded them as being in the nature of trade secrets.

Accepting the testimony of this witness as that of one skilled in the art, we think it indicates that only actual use should be relied upon to demonstrate the effectiveness of Humel's device, simple as it appears when looked at in its physical form.

We regard this case as being somewhat analogous to that of James v. Stimson, 49 F. (2d) 493, 18 C. C. P. A. 1255.

The decision of the Board of Appeals is reversed, and priority awarded to the senior party, Fink.

A diminution of the record was suggested by appellee after the record in this case had been printed, and writ of certiorari was granted directing the certification of certain matter to the court by the Commissioner of Patents, subject to adjudication of the costs therefor.

The matter so certified appears never to have been before either the Examiner of In-

terferences or the Board of Appeals upon the issue of priority here involved upon appeal, and it is deemed equitable that appellee pay the costs incident to said proceeding. Judgment will be entered accordingly.

Reversed.

HATFIELD, Associate Judge, did not participate.