39 C.C.P.A.(Patents)

**KRUGER v. RESNICK.**

**Patent Appeal No. 5853.**

United States Court of Customs and
Patent Appeals.

May 28, 1952.

Willis B. Rice, New York City (Robert I. Dennison, Washington, D. C., of counsel), for appellant.

Armand E. Lackenbach, New York City, for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

WORLEY, Judge.

This is an appeal from the Board of Interference Examiners of the United States Patent Office in an interference proceeding awarding to appellee priority of invention of the subject matter embraced within four counts.

The interference is between an application of appellant, serial No. 90,346, filed April 29, 1949, "For Television Receiving Antenna" and a patent of appellee, No. 2,465,331, dated March 22, 1949, upon an application, serial No. 53,857, filed October 11, 1948.

The counts originated as claims in the patent of appellee and were taken therefrom by appellant for the purpose of provoking this interference.

The subject matter out of which the issue arises relates to a foldable television receiving antenna, particularly to a dipole antenna combined with a reflector with a foldable H-type frame construction. There is no dispute as to the details of the antenna which are clearly set out in the counts.

Count 2 appears to be illustrative of the subject matter and reads as follows:

"2. A dipole antenna in combination with a reflector, comprising a foldable H-frame having a crossbeam, a clamp on said crossbeam for securing the same to a mast, a dielectric bracket rigidly secured to one end of said crossbeam, a pair of rigid conductors oppositely disposed to each other and pivotally mounted upon said bracket, said conductors constituting said dipole when aligned, another bracket rigidly secured to the other end of said crossbeam, another pair of rigid conductors oppositely disposed to each other and pivotally mounted upon said other bracket, said last named conductors constituting said reflector when disposed in alignment with each other and parallel with said dipole, and means for locking said conductors comprising said dipole and reflector in position in which the conductors constituting the dipole are parallel to the corresponding conductors constituting the reflector."

Appellant, in his preliminary statement, alleged first drawings of the invention, and disclosure to others, to have been made on or about June 15, 1947; no written description was made thereof prior to the date of his application, April 29, 1949; the construction of a model comprising the invention started on June 15, 1947, and was completed on or about July 8, 1947; reduction to practice on or about July 8, 1947; and exercise of reasonable diligence in perfecting the invention on or about June 15, 1947.

In the preliminary statement of appellee it is alleged that the first drawing of the invention and disclosure to others and the beginning of exercise of reasonable diligence toward reducing the invention to practice was on December 20, 1947; first written description thereof on February 2, 1948; and actual reduction to practice on December 22, 1947. There is no dispute as to the alleged date of conception by appellant, and appellee relies upon his filing date of October 11, 1948, for constructive reduction to practice.

Appellant, having filed his application subsequent to the issuance of the patent of appellee, has the burden of proving priority of invention beyond a reasonable doubt.

Both parties took testimony, filed briefs, and were represented at final hearing.

In June and early in July 1947, when appellant alleged conception and reduction of the invention to practice, appellee was president of Video Television, Inc. During that period appellant was an employee of the corporation as a design draftsman. The Video company is the assignee of appellant's application. At the time of taking testimony neither of the parties had any connection with the Video company.

In the latter part of July 1947, appellee left the Video company and sometime thereafter organized and became manager of Channel Master Corporation. The business of that company was the manufacturing of television antennas. The patent of appellee was assigned to that corporation so that, in fact, the real parties in interest are the Video Television, Inc. and Channel Master Corporation.

It appears in the testimony of appellant that appellee first mentioned the subject of a foldable antenna to him and that appellant started to design a television receiving antenna upon orders given by appellee. Appellant submitted to appellee various plans and structures of such antennas for his approval.

The only questions for decision here, as they were below, are whether appellant reduced the invention to practice in July 1947 and whether such alleged reduction to practice was anything more than an abandoned experiment.

Two physical exhibits of the antenna are in evidence, one being an incomplete device which was properly not considered by the board. As far as the other exhibit is concerned, it was pointed out in the decision of the board that appellee did not seriously contend that the counts are not supported by it when taken in connection with a clamp of appellant which is also in evidence.

The board held that appellant had not sustained his burden of proof with respect to reduction to practice. That holding was based upon appellant's activities which consisted of merely removing the foldable de-

vice in its folded condition from a sealed carton, placing the elements of the structure in their proper operative positions, refolding the device and replacing it in the carton and a notation of the time that it took to perform such operations.

The counts are for a device in which certain elements are pivoted on others which are to be locked and, in order to be operative, must be maintained in certain fixed positions. The board stated it was essential that determination should be made with a degree of certainty as to whether those elements would remain in their proper positions under normal conditions of use for a reasonable period of time. It correctly stated in its decision that in order to function properly, the reflector element must be maintained substantially parallel with the dipole through all kinds of weather in which antennas are exposed to a multitude of strains and stresses.

It was contended by counsel for appellee that the antenna of appellant should have been tested both electronically and physically. The board, however, noted that the electronic requirements of such structures are so well known that it was not necessary for appellant to have tested his antenna electronically.

It appears, and is commonly known, that prior to the manufacture of foldable antennas rigid antennas were in use. Therefore, it seems to us, as it did to the board, that in substituting a foldable antenna for the known rigid type, it should be shown that the former should possess in reasonable measure the necessary rigidity.

It was argued by counsel for appellant that the parallel relationship between the dipole and the reflector element can be determined by mere inspection. The board observed that such argument may be true but such inspection would not prove that those elements would remain in alignment or in parallelism during severe wind and sleet storms. It concluded that in order to prove actual reduction to practice the device should have been tested under conditions simulating actual service. In support thereof, the board quoted from section 142, Interference Law and Practice, Rivise and Caesar. It also cited the following cases: Jobski v. Johnson, 47 App.D.C. 230; Fageol v. Lyon, 53 App.D.C. 361, 290 F. 336; Payne v. Hurley, 71 F.2d 208, 21 C.C.P.A., Patents, 1144; and Chittick v. Lyons, 104 F.2d 818, 26 C.C.P.A., Patents, 1382.

With respect to the contention of appellant that his device is simple and requires no extensive tests, the board pointed out that the invention involved in the case of Fridolph v. Bechik, 154 F.2d 198, 33 C.C.P.A., Patents, 940, was also simple. In that case, which related to a handle for a mattress, it was held that it had not been shown that the handles in the mattress assembly were actually used in the operation for which they were designed and, therefore, the proof was insufficient to show actual reduction to practice.

It appears that the foldable type of antenna was shown by the Video company to the Philco company but was rejected for the reason that the latter company wished to have made the most rugged type it could find. The Philco Corporation is one of the large manufacturers of television sets and unquestionably its engineers were aware of the requirements for a satisfactory antenna. The record discloses that the Philco company "strenuously objected" to the foldable antenna and that objection, the board stated, tended to show that its engineers were not satisfied that the Video antenna would be substantial enough to stand up under all conditions of weather. In the case of Payne v. Hurley, supra [71 F.2d 210], this court stated:

"* * * The testimony of the witnesses shows, and we think it apparent from the facts presented by the record, that no manufacturer of automobiles or aeroplanes would use spark plugs which had been subjected only to bench or shop tests, and which had never been used under actual working conditions. Many cases might be cited in which the courts have expressed their views that inventions must be reduced to practice by subjection to actual working conditions. A few only are noted:

"This court, in James v. Stimson, 49 F.2d 493, 18 C.C.P.A., Patents, 1255,

held that a highway danger signal, consisting of a device with reflecting surfaces adapted to catch and reflect the rays of light from automobile headlights, must be tested upon a highway, under actual working conditions, to be reduced to practice.

"In Barclay v. Schuler, 41 App.D.C. 250, a wire garment stay formed of a single wire bent in alternately progressive loops, adapted to be used in the manufacture of a corset, was held to necessarily require a test under actual working conditions.

"In Jobski v. Johnson, [supra], a device, part of a means used in retaining an automobile tire on its rim, was held not to be sufficiently tested by shop tests, but must be tested by use upon a car in motion.

"In Fageol v. Lyon, [supra], the court held, speaking through Smith, Judge, of this court, that certain hook bolts used to secure a bumper to an automobile frame were not sufficiently tested by pulling and jerking the bumper, but must be tested upon the road, where they would be subjected to the strains occasioned by the inequalities and conditions of the road.

"The same court, in Crabbs v. Wardell, 57 App.D.C. 241, 19 F.2d 715, in an opinion by Martin, Chief Justice, formerly of this court, held that an invention of prepared roofing, involving a combination of asbestos and cattle hair, impregnated with an asphaltic waterproofing compound, must be tested by experimentation under varying weather conditions, in order that it be successfully reduced to practice.

"Our most recent expression on this subject is found in Fink v. Humel, 70 F.2d 115, 21 C.C.P.A., Patents, [1057], in which we held that a metal strip for use in laying a terrazzo floor was reduced to practice only by use under actual working conditions."

The board, on the record which has been above discussed, held, and in our opinion properly so, that the tests made by appellant were not sufficient to establish actual reduction to practice.

It is conceded that appellant was the first to conceive in June 1947. His reduction to practice was his filing date, April 29, 1949. Therefore, in order to avail himself of his prior date of conception it was incumbent upon him to show diligence during the critical period of from just before appellee entered the field in December 1947 up to the time he filed his own application. There is no testimony from appellant with respect to the work on his device later than 1947 and, therefore, in our opinion, he cannot show the diligence which is required, nor is there any explanation, reason, or excuse for the lack of such diligence. Therefore, we find no error in the decision of the board holding that appellant has not sustained his burden of proof and in properly awarding priority of invention to appellee.

The board in its decision also discussed the question of abandoned experiment, apparently because of a request by counsel for appellee, and held that appellant's record discloses nothing more than such an experiment.

In the brief of counsel for appellant it is alleged as error that appellee derived the invention solely from appellant. There is nothing, however, in the notice of appeal to this court in which such error is set out; therefore, it may not properly be considered here.

In a short section of the brief for appellant it is stated that perjury exists. However, such a ground is not mentioned in the reasons for appeal to this court, hence that question is not before us for determination. At the same time, however, we feel it is not inappropriate to call attention, in greater detail than did counsel for appellant, to that portion of the opinion of the Supreme Court in the case of Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 818, 65 S.Ct. 993, 999, 89 L.Ed. 1381, which reads as follows:

" * * * We need not speculate as to whether there was sufficient proof to present the matter to the District Attorney. But it is clear that Automotive knew and suppressed facts that, at the

very least, should have been brought in some way to the attention of the Patent Office, especially when it became evident that the interference proceedings would continue no longer. Those who have applications pending with the Patent Office or who are parties to Patent Office proceedings have an uncompromising duty to report to it all facts concerning possible fraud or inequitableness underlying the applications in issue. Cf. Crites, Inc., v. Prudential Ins. Co., 322 U.S. 408, 415, 64 S.Ct. 1075, 1079, 88 L.Ed. 1356. This duty is not excused by reasonable doubts as to the sufficiency of the proof of the inequitable conduct nor by resort to independent legal advice. Public interest demands that all facts relevant to such matters be submitted formally or informally to the Patent Office, which can then pass upon the sufficiency of the evidence. Only in this way can that agency act to safeguard the public in the first instance against fraudulent patent monopolies. Only in that way can the Patent Office and the public escape from being classed among the 'mute and helpless victims of deception and fraud.' Hazel-Atlas Glass Co. v. Hartford-Empire Co., supra [322 U.S. [238], 246, 64 S.Ct. [997], 1001, 88 L. Ed. 1250.]"

■ It seems to us that if counsel in a controversy seriously suspects the existence of fraud or perjury he, in the proper discharge of his responsibilities to his client and to the public as well, should exercise diligence in bringing such charges in timely fashion to the attention of the appropriate officials.

For the reasons hereinbefore set out, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

JACKSON, J., sat during the argument in this case but retired April 1, 1952, before the opinion was fully prepared. He was recalled in conformity with Section 294 (c) (d), Title 28 U.S.C. to participate in the decision and did so.