## W. N. PROCTOR COMPANY v. UNITED STATES (No. 4681)[1]

---

[1] C. A. D. 494.

34

United States Court of Customs and Patent Appeals, June 24, 1952

*Henry L. Ziegel* for appellant.

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

*Joseph F. Lockett*, representing Carpet Institute, Inc., appeared as *amicus curiae* on behalf of appellee.

*Reuben Hall*, representing National Wool Marketing Corporation, appeared as *amicus curiae* on behalf of appellee.

[Oral argument April 8, 1952, by Mr. Ziegel, Mr. Weeks, and Mr. Lockett]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, and WORLEY, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, C. D. 1289, overruling the protest in behalf of the importer and from a subsequent order denying a motion to vacate the judgment and for a rehearing.

The imported merchandise, which was entered for the account of Harry N. Bloomfield Company by appellant, a firm of customs brokers at Boston, consisted of 25 bales of greasy wool shipped from Buenos Aires, Argentina, and described on the invoice as "United States Official Standard, Mestiza, 56/58's, skirted, clothing, practically free from vegetable matter. Shrinkage 54%." It was classified by the collector under paragraph 1102 (b)[1] of the Tariff Act of

---

[1] Par. 1102. (b) Wools, not specially provided for, and hair of the Angora goat, Cashmere goat, alpaca, and other like animals, in the grease or washed, 34 cents per pound of clean content; scoured, 37 cents per pound of clean content; on the skin, 32 cents per pound of clean content; sorted, or matchings, if not scoured, 35 cents per pound of clean content.

1930 as wool in the grease, not specially provided for, and assessed with duty at the rate of 34 cents per pound of clean content.

The protest filed against the action of the collector claimed the merchandise was properly dutiable under paragraph 1101 (a) of the Tariff Act of 1930, as amended by the trade agreement with Argentina, 77 Treas. Dec. 138, T. D. 50504, either under the *eo nomine* provision for Cordova wool, in the grease or washed, carrying an assessment of duty of 13 cents per pound of clean content, or as "sorted, or matchings" therefrom, dutiable at the rate of 14 cents per pound of clean content.

The modified rates of duty prescribed by the involved trade agreement are as follows:

> 1101. (a) Wools: Donskoi, Smyrna, Cordova, Valparaiso, Ecuadorean, Syrian, Aleppo, Georgian, Turkestan, Arabian, Bagdad, Persian, Sistan, East Indian, Thibetan, Chinese, Manchurian, Mongolian, Egyptian, Sudan, Cyrus, Sardinian, Pyrenean, Oporto, Iceland, Scotch Blackface, Black Spanish, Kerry, Haslock, and Welsh Mountain; similar wools without merino or English blood; all other wools of whatever blood or origin not finer than 40s; all the foregoing
>
> > In the grease or washed_____ 13¢ per lb. of clean content.
> > Scoured_____ 16¢ per lb. of clean content.
> > On the skin_____ 11¢ per lb. of clean content.
> > Sorted, or matchings, if not scoured_____ 14¢ per lb. of clean content.

The record discloses that primarily and for practical purposes all wools may be divided into clothing wools and carpet wools; [2] that the classification thereof is not determined by the use to which each lot is best adapted; and that almost all wools can be used for more than one purpose. The effort to have wool classified at the lower rate provided for carpet wools is not a new proposition. At the Hearings before the Ways and Means Committee, 66th Congress, 1920–21, Part IV, page 2668, the witness George McNeir testified:

> And let me at this point give you one illustration of the scarity of carpet wools. Twenty-five years ago we brought in from Argentina at least 25,000,000 pounds per annum of Cordova wool. No better carpet wool was ever brought into the United States. Now we bring in about 3,000,000 pounds. Why? Because the farmers and woolgrowers in Argentina have learned that by crossing their breeds with the Merino or English breeds they produce a wool that is immediately taken out of the third class and put in the first class [clothing wool], * * *.

Cordova wool has belonged regularly, however, in the class of carpet wools and has been grown and packed principally in the provinces of Cordova and San Luis, Argentina.[3] The term "mestiza," as explained in the Report of the Tariff Board on Schedule K, submitted to the 62nd Congress as Document 342 in 1912, "is the Spanish for 'mixed,'

---

[2] *United States* v. *Stone & Downer Company*, 274 U. S. 225, 239.

[3] *Report of the Tariff Board on Schedule K*, 1912, at page 420, states:

In former times Spain, celebrated for many things, was also noted for its fine sheep. As it started colonies in different countries, it sent its sheep there and thus established woolgrowing in those places. Cordova wool, found in South America, comes from the descendants of these sheep and it is one of the finest wools of Class III. (Used generally for carpets.)

and was used to designate wools produced by a cross between a full-blooded merino and the native South American criolla sheep. The criolla sheep, probably descended from some of the unimproved flocks of Spain, were driven over the Andes into Argentina about 1600 and allowed to degenerate and run wild." The witness C. Edwin Webb gave testimony regarding wool that had been skirted, graded, or sorted, as noted in the decision appealed from:

* * * Skirting a fleece is to remove coarse wool around the edge and then repack and bundle the bales, the wool remaining in fleece form with the edges removed. To grade wool is to separate the fleece into lots according to the preponderance in type of the fibers. Sorting is a manipulation through which undesirable grades are removed. Grading is done in the warehouse; sorting in the mill where the operation is dependent on the ultimate use of the commodity.

The merchandise in this case consists of wool sortings, or sorted wool, and the dominant issue is whether the goods are sorted or matchings of Cordova wool.

The trial was held alternately in Boston and New York, during the sessions of which 16 witnesses were called; 8 for the importer and 8 for the Government. All of them gave expert testimony on the point in issue, and in the prevailing and dissenting opinions which were written all of the witnesses were described as well qualified for that purpose. The majority in its opinion, C. D. 1289, analyzed the evidence submitted in behalf of both of the parties and derived the following conclusion therefrom:

The preponderance in weight of the evidence establishes that the wool under consideration is not Cordova wool, nor "sorted, or matchings" therefrom, within the provisions of paragraph 1101 (a), as amended, *supra*, but is a mixture of Argentina wools, consisting of pieces of various types from different provinces or districts and recognized as "off-sorts" taken from different parts of fleeces. The merchandise, being a conglomerate mass of wools, is classifiable under paragraph 1102 (b), *supra*, as assessed by the collector.

The dissenting opinion declared that the importer's protest should have been sustained on the ground that the weight of the evidence established the imported sortings consisted of Cordova wool, dutiable as alternatively claimed, at the rate of 14 cents per pound of clean content.

A motion by appellant for a rehearing was denied, Abstract 55294.

On the collective appeal taken from the judgment hereinbefore described and the order denying the motion for a rehearing, appellant's primary contention is that the majority failed to properly evaluate the testimony of the witnesses for appellant, which testimony, in accordance with the view expressed in the dissenting opinion, should have been given greater weight than that attributed by the majority to the testimony offered in behalf of appellant.

Counsel for the Government in opposing appellant's motion for the rehearing below noted that appellant in support of its motion nowhere

pointed to any particular evidence which had been overlooked at the trial or that appellant had any new evidence to offer. It is further noted here that, according to the prevailing opinion of the court below, only a question of fact was there submitted for final decision on the merits of the case by the respective counsel and that no legal questions, even as to the rulings made by the trial court during the taking of testimony, had been raised.

The importer in support of his protest in customs litigation must establish not only the alleged erroneous classification of the merchandise but also the correctness and validity of his own position with respect to the proper classification thereof. *United States* v. *Good Neighbor Imports, Inc.*, 33 C. C. P. A. (Customs) 91, C. A. D. 321. A great volume of testimony was presented by both sides in this case. The printed record comprises 474 pages. The briefs submitted by counsel for the respective parties and for *amici curiae*, collectively, represent 268 printed pages. All of the importer's witnesses were dealers in wools used for apparel and had little experience in the handling of carpet wools, whereas all of the witnesses for the Government had many years of experience in the purchase and handling of carpet wools.

The prevailing opinion of the Customs Court, C. D. 1289, has detailed at length the essential testimony of the entire record. We deem it unnecessary, therefore, to repeat that evidence here. Suffice it to say, that certain testimony of the witnesses for the parties is in direct conflict in various aspects. On some points brought to the attention of the court, the experts have disagreed among themselves. However, there is evidence in the record which supports the findings of fact made by the majority, and there is no legal justification presented here which would warrant our disturbance of their conclusions.

This court has constantly adhered to the long established principle that while the court has the power to review the findings of the United States Customs Court upon issues of fact, such findings will not be disturbed, especially where they turn upon the intelligence and credibility of witnesses, unless such findings are without evidence in the record to support them, or are clearly contrary to the weight of such evidence. *United States* v. *C. J. Tower & Sons*, 38 C. C. P. A. (Customs) 131, 136, C. A. D. 450; *United States* v. *Riebe*, 1 Ct. Cust. Appls. 19, T. D. 30776; *Esposito et al.* v. *United States*, 12 Ct. Cust. Appls. 334, T. D. 40485; *In re Van Blankensteyn*, 56 Fed. 474.

Counsel for appellant in its brief has characterized testimony given by the Government's witnesses as biased and not the "kind of evidence which can be properly evaluated without scrutiny as to its motivation," and that in the case of Webb and Martin, Government's witnesses, the inference that they testified falsely seems inescapable in the light of certain affidavits previously filed by them. The latter

point was raised by appellant in the motion for rehearing before the Customs Court but apparently was not deemed a controlling factor by the majority.

The dual jurisdiction of this court involves the rendition of decisions and judgments which peculiarly affect the public interest. We deem it incumbent upon counsel in a controversy wherein he discovers or seriously suspects the existence of fraud or perjury to exercise diligence in bringing such matters, in timely fashion, to the attention of the trial court or other responsible officials. Appropriate action then may be taken thereon in the interest of justice; otherwise statements as to fraud and perjury are looked upon by this court with disapproval and as being irresponsible and unjustified. *Kruger* v. *Resnick*, 39 C. C. P. A. (Patents) 994, 197 F. (2d) 348, 94 USPQ 65, Patent Appeal No. 5853; *Louis P. Josserand* v. *Samuel Herbert Taylor, Jr.*, 34 C. C. P. A. (Patents) 824, 159 F. (2d) 249, 72 USPQ 357.

While the dissenting opinion states "It appears to the writer that the witnesses for both sides were equally qualified to give expert testimony on the point in issue," the judge nevertheless found as a matter of fact that unless the aforementioned testimony were given the weight claimed for it by appellant, it must follow as a necessary result that Congress did a vain, nugatory and useless act in providing in paragraph 1101 (a) for assorted Cordova wools. As the Government's counsel correctly points out here, the dissenting judge failed to take into consideration that the paragraph provides for 29 named wools, some of which could be sorted and matched while others could not.

We have examined appellant's further contention with respect to the violation by the Collector of Customs of section 315 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and find no error on the part of the majority in the adverse ruling which they made on that point.

For the reasons hereinbefore stated, the judgment of the United States Customs Court, and its decision denying appellant's motion to vacate the judgment, are *affirmed*.