**ETTEN et al. v. KAUFFMAN et al.**
No. 3.

District Court, W. D. Pennsylvania.
Feb. 21, 1940.

Tefft & Tefft, of Chicago, Ill., and Brooks, Curtze & Silin, of Erie, Pa., for plaintiffs.

H. C. Lord, of Erie, Pa., for defendants.

SCHOONMAKER, District Judge.

This is a patent suit relating to clothes wringers. It involves (1) proceedings under Section 4915, R.S., 35 U.S.C.A. § 63, in which plaintiffs are seeking an adjudication to the effect that they are entitled according to law to receive a patent for the alleged invention according to the claim of the Etten application 648,409, filed December 22, 1932, as against the two Kauffman applications, Nos. 621,921 and 621,922, both filed on July 11, 1932; and (2) the counterclaim of defendants charging plaintiffs with infringement of Webster Patent No. 1,439,655; Gehrlein Patent No. 1,709,-071; Schuda Patent No. 1,709,098; Kauffman Patent No. 2,065,329; Kauffman Patent No. 2,065,330.

■ I. The case under Section 4915, R. S., was heard on the evidence taken in the Patent Office's interference proceedings. On the trial, plaintiffs sought to introduce other evidence which we ruled to be inadmissible, in view of the fact that there was no showing that the evidence sought to be introduced was not available to the plaintiffs at the time of taking testimony in the Patent Office in the interference proceedings. See Barrett v. Koppers, 3 Cir., 22 F. 2d 395.

The Etten application 648,409, filed December 22, 1932, and the two Kauffman applications 621,921, and 621,922, both filed July 11, 1932, were involved in Patent Office interferences between these parties, Nos. 67,017 and 67,020. These two interferences were consolidated and continued as interference No. 67,019.

In the Patent Office proceedings, testimony was taken by both parties, and the matter heard before the Examiner of Interferences, who, on January 3, 1936, filed a decision awarding priority of invention to Walter L. Kauffman. Etten then appealed to the Patent Office Board of Appeals, and after hearing, that Board affirmed the decision of the Examiner on October 23, 1936. Etten then brought this suit under Section 4915, R.S.

■ The Supreme Court has laid down the following rule applicable to proceedings under this statute: "Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction. Tested by that rule, the solution of this controversy is not difficult. Indeed, the variety of opinion expressed by the different officers who have examined this testimony is persuasive that the question of priority is doubtful, and, if doubtful, the decision of the patent office must control." Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L. Ed. 657.

The Circuit Court of Appeals of this Circuit had occasion to consider the effect of the 1927 amendments upon the rule announced in Morgan v. Daniels, supra, and held that this rule was not abrogated by the 1927 amendments. See General Talking Pictures Corporation v. American Tri-Ergon Corporation, 3 Cir., 96 F.2d 800, 812.

With this rule in mind, we have examined the record in the Patent Office proceedings, and find that the subject-matter

of the interferences is a wringer defined in nine counts, of which the Patent Office Examiner cites counts 1 and 4 as typical:

"Count 1: In a wringer, the combination of a frame; rolls mounted in the frame; a top bar; pressure means for the rolls exerting pressure from the top bar; a latch securing the top bar on the frame; a trip bar extending across the front of the frame carried by the top bar; and means actuated by the trip bar releasing the latch.

"Count 4: In a wringer roll pressure sustaining mechanism, in combination, a wringer roll supporting frame, a removable transverse member adapted to be supported thereon at one end by means integral with the supporting frame co-acting with means integral with the transverse member and at the other end by releaseable locking devices which are manually operable by means of parallel hand rails."

The Examiner held that Etten was confined to his filing date, December 22, 1932, for reduction to practice; that, even if Kauffman's evidence as to reduction to practice be disregarded and his filing date (July 11, 1932) be relied upon, he was the first to reduce to practice, and therefore entitled to the patent. The Examiner found there was no evidence on the part of Etten of successful testing of his wringer other than his own testimony, and that the testimony of the inventor alone is not sufficient to establish such tests. The Board of Appeals of the Patent Office upheld the conclusion of the Examiner. On examination of the Patent Office record, we find ourselves in accord with the findings of the Board of Appeals of the Patent Office.

■ We are dealing here with a crowded and complicated art. Novelty is claimed to reside in "a trip bar extending across the front of the frame carried by the top bar" which is provided as a safety device to release pressure on the wringer rolls. This is a device in which a "satisfactory test" is essential to establish utility. Etten failed to establish such a test prior to the time Kauffman filed his patent application. Therefore, priority was awarded to Kauffman. We do not have here such a simple invention as not to require a test such as noted in the case of Fink v. Humel, Cust. and Pat.App., 70 F.2d 115. Surely, in a safety device, it is absolutely essential that a satisfactory test of the device be established. That was not established in the instant case prior to the filing date of the Kauffman applications. We therefore conclude that the Patent Office correctly awarded priority of invention to Kauffman. The bill under Section 4915, R.S., will be dismissed. A decree may be submitted accordingly.

II. The counterclaim charges plaintiffs with infringement of claims 2, 4, and 5 of Webster Patent No. 1,439,655; claims 2 and 3 of Gehrlein Patent 1,709,071; claims 1 and 2 of Gehrlein Patent 1,709,125; claims 1, 9, and 10 of Schuda Patent 1,709,098; claims 4, 6, 7, 8, and 9 of Kauffman Patent No. 2,065,330; and claim 4 of Kauffman Patent No. 2,065,329. The plaintiffs contend that each and all of the claims of these patents in suit are invalid, and that none of them is infringed.

The patents involved in the counterclaim all relate to the washing-machine-wringer art. Before any of the patents in suit were issued, many thousands of wringers had been made and were in use. Substantially all of these wringers comprise a frame, co-operating wringer rolls in the frame, a top bar of some kind, a spring means between the top bar and the rolls, and adjusting devices for regulating the degree of pressure imparted through the spring to the rolls. Top bars were removable in various fashions to effect release thereof, and a corresponding quick release of the pressure exerted between the rolls.

■ All of the patents in suit relate to safety devices incorporated in wringers for the release of pressure on the wringer rolls in cases of emergency arising through the hand or a portion of the garment of an operator being caught between the rolls. None of these patents can in any sense be classed as pioneer patents, such as would entitle the patentee to any considerable range of equivalents, and must, if valid, be limited to the precise elements shown in the patents. See Computing Scale Co. v. Automatic Scale Co., 204 U.S. 609, 27 S.Ct. 307, 51 L.Ed. 645; Smith v. Magic City Kennel Club, 282 U.S. 784, 790, 51 S.Ct. 291, 75 L.Ed. 707.

With this preliminary statement, we take up consideration of the several patents involved in this suit:

Webster Patent, No. 1,439,655. This patent issued December 19, 1932. Claims 2, 4, and 5 are in suit.

The dominant feature of this patent is the safety device for releasing pressure between the wringer rolls. The patent specifi-

cations, page 1, lines 7–19, inclusive, state the object of the invention as follows:

"This invention relates to wringers, and has special reference to a mechanism for quickly releasing the pressure devices of the wringer rolls, whereby the pressure devices may be quickly released whenever desired, as in case of an emergency.

"An object of the invention is to provide a wringer with equipment cooperating with the pressure devices for the wringer rolls, whereby the pressure may be quickly released in a more convenient manner from either side of the wringer than is possible in wringers of ordinary construction."

In claims 2, 4, and 5, the novel element claimed is the arrangement of the releasing actuator so as to be effective to release pressure on the wringer rolls through an inward horizontal push towards the face of the wringer. In the claims in suit, this alleged novel element is not claimed by itself alone, but in combination with a removable top bar of the wringer on which the actuator is mounted, limited in each claim, in one way or another, to a rigid top bar. Each of the claims includes a cross-bar which holds the upper roll under pressure. Each of them retains the cross-bar in pressure holding relation to a latch. Each of them involves push-plates for actuating the latch by inward movement towards the wringer frame. As these are the elements relied upon by the counter-claimants to distinguish from the prior art, we need only to consider these elements in passing on the question of validity of the Webster patent.

The prior art admittedly shows a wringer of the general combination claimed by Webster, possessing a continuous top bar provided with latches to retain the ends thereof, and correspondingly maintaining the pressure of the spring means for the cooperating rolls, combined with a release-actuating bar extending substantially across the face of the machine, and adapted to effect release to permit the top bar to ascend and correspondingly dispense with the pressure on the rolls by a blow downwardly and inwardly from the hand of the operator in engagement with the bar at any point longitudinally thereof.

As we view the case, all that Webster has done is to turn down on its side, or place horizontally the actuating levers or push-plates of the prior art. In this we do not see invention, but only a mechanical expedient, which would be obvious to a skilled workman in the wringer industry. Certainly, it would appear obvious that an actuating plate or lever, if vertically disposed, could just as well, and without invention, be horizontally disposed, or vice versa. See Grinnell Washing Machine Co. v. Johnson, 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196; New Jersey Zinc Co. v. American Zinc, Lead & Smelting Co., D.C., 276 F. 733, affirmed 1 Cir., 284 F. 305.

▇▇▇ Therefore, failing to find invention in the push-plate element of the combination claims of the patent in suit, we must hold the claims of the Webster patent in suit void for want of novelty. We are of the opinion also that the same result would follow, even if there were novelty in the release element, as we cannot see that the whole wringer structure could be covered by a combination claim by the mere improvement of one element of an old combination. See Bassick v. Hollingshead Co., 298 U.S. 415, 425, 56 S.Ct. 787, 80 L.Ed. 1251; Lincoln Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008.

In connection with the Webster patent, it should be noted that the patent has expired, and that there is no evidence in the record the wringer disclosed by the Webster patent was ever manufactured or marketed. In fact, the Webster wringer (Defts' Ex. F.F.F.) was made up for evidential purposes in this case.

### Gehrlein Patents Nos. 1,709,071, and 1,709,125.

These patents are exemplified in physical exhibits (Defts' G.G.G. and H.H.H.). Claims 2 and 3 of Gehrlein Patent No. 1,-709,071, and claims 1 and 2 of Gehrlein Patent No. 1,709,125 are in suit. The claims of both patents are directed to struck-up, interlocking connections between the closed ends of channel-shaped top bars of wringers, and the walls of the side stiles thereof.

Gehrlein Patent No. 1,709,071 covers this struck-up connection, in which a struck-up shoulder is formed either in the closed end of the top bar (claim 2) or the wall of the stile (claim 3).

The Gehrlein Patent No. 1,709,125 calls for the struck-up shoulder in both the stile and the end of the top bar combined with means at the opposite end of the stile permitting the engagement of the shoulders, and the swinging of the free end of the bar into securing position (claim 1). Claim 2

has the limitation that the securing means comprises a latch.

■ These patents do not involve any release mechanism. They are designed to fasten together the top bar of a wringer to the sides thereof, so as to unite the wringer frame in a firm structure. In other words, the patents undertake to provide a means of uniting the top of a metal frame for a wringer with the side portions or stiles thereof. The question is, What new thing is involved in the fastening together of the top of a metal frame with the side portions or stiles thereof in the means suggested in the Gehrlein patents? We can see nothing novel in his so-called stabbing of the metal to constitute a detachable union or hinge. No new result is accomplished by the Gehrlein method. The connection between the top and frame, casing or container, is just the same as in the wringers of the prior art, the only object of use of the Gehrlein wringer being in the instance of Patent 1,709,071 to interlock the top and frame together by a forced downward application from the stabbed end of the top bar; and in Patent 1,709,125 to enable the same application by a swinging movement from the stabbed end of the top bar towards the opposite or latched end thereof. In this we see no element of invention. We cannot see that it makes any difference whether the engagement walls of the hollow cap or top bar and wringer are interfitted by stabbed portions, or by removable hinge, or by simple insertion, as in Webster, into the receiving opening of a bracket or frame. All these were well-known structures before Gehrlein; and the substitution of one for the other could have been nothing more than optional selection on the part of a workman or skilled mechanic, requiring no invention. As we view these patents, the fundamental idea incorporated in the union of the top bar or cover with the frame was an old mechanical expedient found in a great variety of cross-sectional containers in use most everywhere for years, having flanged lids, some kind of pivotal connection at one end, and a latch or locking tongue at the other end. The fact that these structures may have been in a different art, is not determinative of invention, for the courts have held that the mere adaptation of a contrivance old in one art to a different art, where the same function and result are accomplished, is not invention. See Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856. Mechanics used stabbing before Gehrlein, and the fact that he found that for purposes of economy and ease of manufacture stabbings could be used in the wringer art, would not spell invention. See Burr v. Duryee, 68 U.S. 531, 571, 1 Wall. 531, 17 L.Ed. 650.

■ Nor can the fact that Gehrlein uses a heavier or more rigid metal in his wringer top be classed as invention, because there is no new mode of operation in his stabbing connection. See our opinion Johnstown & Jennings Co. v. Neville, D.C., 26 F.Supp. 754.

■ We therefore hold the Gehrlein patent invalid.

Schuda Patent No. 1,709,098.

Claims 1, 9, and 10 of the patent are in suit. Claim 1 of this patent reads as follows: "1. In a wringer, the combination of a frame; rolls mounted in the frame; tension means exerting pressure on the rolls; a safety release device releasing tension on the rolls; and a secondary release operated through the release of tension device extending the release clearance of the rolls."

It is in the secondary release element of this claim that novelty is said to reside. The safety release is old in the art, and it is the secondary release only in which invention is claimed to reside. When the safety release is operated, tension on the wringer rolls is released. The spring 10 which holds the rolls under pressure is released, moves upwardly. The ends thereof are carried into contact with the cross-bar of the wringer; latches on the cross-bar are released; and the top bar, as a whole, is released.

The entire purpose of the Schuda patent is to obviate violent movement of the movable top bar of the wringer, and for that purpose a new element is introduced in the special and peculiar supplemental releasing means. The claims of the patent should properly have been confined to that element. But, be that as it may, we do not find in the alleged infringing structures any secondary or supplementary release elements that correspond to the secondary release element of Schuda. We see in the alleged infringing structures only a single release old in the art.

We turn now to claims 9 and 10 of the Schuda patent which read as follows:

"9. In a wringer, the combination of a frame comprising side stiles; rolls mounted in the side stiles; a top rail of flange con-

struction extending over the top of the side stiles and housing the same; and latches housed within the top rail forming locking means between the top rail and the side stiles.

"10. In a wringer, the combination of a frame comprising side stiles; rolls mounted in the side stiles; a top rail of flange construction having down-turned ends extending over and housing the tops of the stiles; and latches mounted within the top rail forming locking means between the top rail and the side stiles."

 The only difference in the wording of these two claims is that in claim 9 the latches are "housed within the top rail", and in claim 10, these same latches are "mounted within the top rail." We see no difference in the two claims; they both mean the same thing. We assume that the latches located within the top rail are for use in connection with the two-step release of claim 1. If that is so, plaintiffs would not infringe, because they lack the two-step release. On the other hand, standing alone, we can see no invention in mounting or covering latches or other parts that might be exposed. In addition, the prior art, i. e., the Woodrow wringer, discloses the mounting of the latching elements in the hollow or flanged top bar of a wringer frame. Then, too, if this method of mounting latches was new, that element alone should have been claimed and not the whole combination of the elements that constitute a washing-machine wringer. See Bassick v. Hollingshead Co., 298 U.S. 415, 425, 56 S.Ct. 787, 80 L.Ed. 1251; Lincoln Engineering Co. v. Stewart-Warner Corporation, 303 U.S. 545, 549, 58 S.Ct. 662, 82 L. Ed. 1008. We conclude that claim 1 of the Schuda patent is not infringed, and that claims 9 and 10 thereof are invalid.

### Kauffman Patents Nos. 2,065,329 and 2,065,330.

These patents are exemplified by physical exhibits J.J.J. and K.K.K. Novelty is claimed to reside in these two patents in the provision for limiting positively the upthrow of the top bar of a wringer when the safety release is operated. This is accomplished by the structure shown in Kauffman Patent 2,065,329, by providing a top or flat or plate spring assembly, which is attached directly to the Misner releasing mechanism, so that the top and the spring are tied together as an assembly unit. The arresting member is in the form of a strap which is looped over the end of the flat spring and extends downwardly telescopically within the hollow stile of the wringer past the upper bearing block and below the lower bearing block; the arresting strap being locked under the lower bearing block, is thereby locked against upward movement.

Kauffman Patent No. 2,065,330 provides arresting links which are slidingly mounted in the side stiles of the wringer, and directly engage or interlock with a rigid part of the side stile structures positively to limit their upward movement.

Claim 4 of Kauffman Patent No. 2,065,329 is in suit. It reads as follows: "4. In a wringer, the combination of an open top rigid frame comprising a base and hollow side stiles; wringer rolls; bearings for the wringer rolls in the stiles; a top bar and plate spring assembly exerting pressure on the bearings of the upper roll, said spring reacting on the top bar; a quick release for one end of the top bar; and an arresting member for the assembly extending telescopically into a stile and being guided by the stile; means positively limiting the upward movement of the member relatively to the stile and arresting the assembly when the top bar is released; and a connection between the end top bar and the stile opposite the release."

Claims 4, 6, 7, 8, and 9 of Kauffman Patent No. 2,065,330 are in suit. We cite claim 4 as a sample claim: "4. In a wringer, the combination of a frame having side stiles; wringer rolls; bearings for said rolls mounted in the stiles; a top for the frame; a spring between the top and the upper bearings exerting pressure on the bearings and counterpressure on the top; a safety release device detachably securing the top on the frame at least at one end of the top; and top arresting means slidingly mounted in and having guiding engagement with a wall of a stile, said means directly locking with the stile limiting the upward movement of the top upon release."

It is in the stop-elements of the two Kauffman patents that novelty and invention is said to reside. In our view, the provision for arresting elements to stop the upward movement of the wringer-top is not invention, but the mere exercise of mechanical skill. The Circuit Court of Appeals of the 8th Circuit (Walter H. Sanborn, Circuit Judge) in National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 F. 693, 723, in speaking of the use of retaining lugs in a patentable combination, well

192

states the applicable principle, as follows: "There are some mechanical devices so obvious and appropriate for the performance of their accustomed functions that the common knowledge and experience of those unskilled in mechanics, to say nothing of those learned in the art, at once suggests their use when the results which they customarily attain are desired. Projections or lugs on approaching jaws or flanges, for the purpose of limiting their closing, are surely among these contrivances. The moment the want of this limitation is felt, projections on the jaws or flanges naturally occur to those unskilled, as well as to those skilled, in the art, as the most obvious and appropriate means to fill the want. There can be neither discovery nor invention in applying a remedy so plain to, or in combining a contrivance so obvious with, an old mechanical device which needs it." This citation is quoted with approval in Fisher Governor Co. Inc. v. C. F. Camp Co., 10 Cir., 40 F.2d 341, 343.

The Circuit Court of Appeals of the 2nd Circuit, in Eclipse Mach. Co. v. E. Krieger & Sons, Inc., 87 F.2d 755, 758, applies the same principle, in speaking of the introducing of a spring in a gearing for starting an internal combustion engine for cushioning purposes or for reducing shocks as follows: "There is no reason to grant a monopoly based on the idea of introducing a spring in this type of starter for the purpose of limiting deceleration torque; that is, reducing the shock. Springs had been used, and their use for cushioning purposes was well known. To use one here was simply the obvious thing to do. Concrete Appliances Co. v. Gomery, 269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222. The addition of the spring to this mesh and demesh structure did not constitute invention."

It appears to us self-evident that any skilled mechanic could provide a stop or barrier, or equivalent device in any mechanism where a movement of one part in relation to another was to be impeded or stopped.

In addition to that, we find the substance of the Kauffman claims has been anticipated in the stop-elements of Stocking Patent 1,342,005, and the Altorfer public-use machine which was placed on the market, sold, and used in great numbers prior to the Kauffman applications. Stocking has the very obvious mechanical equivalent of the plate spring of Kauffman, namely, the coiled spring. Certainly, the substitution of different kinds of springs involves no invention. See United States v. Berdan Firearms Mfg. Co., 156 U.S. 552, 15 S.Ct. 420, 39 L.Ed. 530; Smith v. Springdale Amusement Park, Ltd., 283 U. S. 121, 51 S.Ct. 368, 75 L.Ed. 878; In re Blair, Cust. & Pat.App., 102 F.2d 841, 842. As we view the Stocking Patent, either one of the stops 11 may be regarded as the "arresting device," and the other of said stops as a "connection between the end of the top bar and the stile opposite the release." As to the Altorfer, we find a stop in substantially the same combination of elements recited in claim 4 of Kauffman Patent 2,065,329. The fact that there may have been a defect in the Altorfer structure, in that the stop was not long enough invariably to prevent removal of the parts adapted to cooperate with the stop, it would require only a mechanical expedient to elongate the stop or to attach a barrier to the frame, such as a detachable metal strap or clip. This would not require invention. See Hobart Mfg. Co. v. Landers, Frary & Clark, D.C., 26 F.Supp. 198, District Judge Thomas saying on page 202: "Assuming that the devices disclosed in the three patents relied on by the defendant have some defects, it is obvious that a mere difference or change in the mechanical construction in size or form of the thing used, in order to obviate known defects existing in the previous devices, although those changes are highly advantageous, and far better and more efficacious and convenient, does not make the improved device patentable. In order to be patentable, it must embody some new idea or principle not before known. It must be a discovery, as distinguished from mere mechanical skill or knowledge."

Finally, it must be noted that the Kauffman claims in suit are all combination claims, in which the arresting or stopping elements of particular construction are the only ones having alleged novelty. In such a situation, we are of the opinion that the patents should have been directed to the precise stopping elements Kauffman claims to have invented. See Langan v. Warren Axe & Tool Co., 3 Cir., 184 F. 720; Lincoln Engineering Co. v. Stewart-Warner Corporation, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Bassick Mfg. Co. v. Hellingshead—(Rogers v. Alemite Corp.), 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251.

Stopping elements were not new with Kauffman. If he invented anything, it was a particular type of stopping element,

which we do not find in plaintiffs' accused wringer, Exhibits A and C.

We therefore conclude that these Kauffman patents are invalid; and that even if valid, have not been infringed.

Our findings of fact and conclusions of law are filed herewith. Decrees may be submitted accordingly.