**E. I. DUPONT DE NEMOURS & CO. et al.**

**v.**

**AMERICAN CYANAMID CO. et al.**

**Civ. No. 1005–51.**

United States District Court,
District of Columbia.

March 10, 1954.

Edward B. Beale, Frank E. Robbins, Jr., Washington, D. C., for plaintiffs.

Charles M. Thomas, S. W. Russell, Washington, D. C., Harvey W. Edelblute, Stamford, Conn., for defendant Cyanamid.

E. H. Mosher, Washington, D. C., Kern Folkers, Boston, Mass., for defendant Monsanto.

McGUIRE, District Judge.

This is a suit filed under the provisions of R.S. § 4915 as amended, 35 U.S.C.A. § 63. Since its filing Section 63 has been repealed and recodified by Sections 145 and 146 of Title 35. The plaintiff seeks to reverse a decision of the Board of Interference Examiners of the Patent Office which awarded priority to Defendants Paden and Mackay, and the consequent refusal of that tribunal to grant plaintiffs a patent. The invention involved relates to a process for the production of melamine by heating urea and ammonia under pressure.

The interference arose out of the filing of the three following patent applications: I. That of Paden and Mackay, assignor of American Cyanamid filed on July 17, 1943; II. That of Loder, assignor of duPont filed on September 28, 1943; and III. That of Dyer and Healy, assignor of Monsanto, filed on April 11, 1946. American Cyanamid, being the first to file, stood on its filing date to thus establish a constructive reduction to practice. The Board found that duPont was the first to conceive the process involved, but held that duPont had neither reduced the invention to practice before July 17, 1943, the filing date of American Cyanamid, nor exercised reasonable diligence in reducing it to practice from a time immediately prior to that date.

The invention itself is a novel process for the production of an old and well known compound, melamine, from two old and well known chemicals, urea and ammonia. The claim or count involved, as formulated by the Patent Office, reads as follows:

"A process for the production of melamine which comprises heating urea and ammonia from an external source in a pressure-resistant vessel at a temperature of at least 270°C. and under a pressure of at least about 200 atmospheres, whereby melamine is produced and recovering the thus produced melamine."

The reaction can be represented by two equations, the second of which indicates some of the intermediate steps that occur:

$$\text{I.} \quad 3\,(CO\,(NH_2)_2) \longrightarrow C_3H_6N_6 + 3\,(H_2O)$$
$$\text{(Urea)} \qquad\qquad\qquad \text{(Melamine)}$$
$$\text{II.} \quad 6\,(CO\,(NH_2)_2) \longrightarrow C_3H_6N_6 + 6NH_3) + 3\,(CO_2)$$

At the trial certain evidence was admitted *de bene,* the Court reserving the question as to its ultimate admissibility. Addressing itself initially, therefore, to this problem the Court rules that the rebuttal testimony of Schweitzer and Mitchell relating to experiment 8–61 and contained in plaintiffs' exhibit 7–H which was excluded by the Patent Office tribunal is admitted here, this being a trial *de novo.* Also admitted is plaintiff's exhibit 10 (rebuttal exhibit 1 before the Patent Office) which contains a petrographic and nitrogen analysis of the melamine obtained in the 8–61 experiment. I cannot agree with the ruling of Judge Holtzoff in Schering Corp. v. Marzall, D.C.1951, 101 F.Supp. 571 to the effect that the failure to present this evidence at the initial hearing before the Patent Office and its attempted subsequent presentation some time later is a "withholding" in the sense that the term is understood in the adjudicated cases. Boucher Inventions v. Sola Electric Co., 1942, 76 U.S.App.D.C. 160, 131 F.2d 225; Barrett Co. v. Koppers Co., 3 Cir., 1927, 22 F.2d 395.

■■ The evidence in the form of McAlevy's monthly reports, plaintiffs' exhibits 11–A to 11–G, was not presented to the Board. It was, however, admitted as indicated at the trial subject to the Court's ruling as to its admissibility. The law is clear that evidence withheld or suppressed before the Patent Office cannot be introduced at a trial under R.S. § 4915. Barrett Co. v. Koppers Co., supra; Boucher Inventions v. Sola Electric Co., supra. However, the question of whether or not this doctrine extends to evidence not presented because of lack of diligence in preparing one's case has not been clearly decided. Dowling v. Jones, 2 Cir., 1933, 67 F.2d 537. In the instant case, however, it is clear from the testimony of McAlevy and Plumley (T. pp. 263, 275–278, and 310) that these reports were withheld *not* out of neglect in preparation and *not* because they were confidential from the standpoint of national security, a point strenuously argued by plaintiffs' counsel at trial, but because they contained "house secrets" that duPont did not desire to disclose to its competitors. This is fatal. And since these reports were therefore intentionally withheld before the Board, they are not now admissible here.

■ Plaintiffs' exhibits 13A–1 to 13A–5, 13E to 13Z, and 13AA to 13BB, which represent the correspondence and affidavits filed by the American Cyanamid Company in conflict proceedings before the Canadian Patent Office were also admitted tentatively subject to connection. DuPont claimed that the Board had placed upon it the added burden of showing its experiments had established economic feasibility. In order to establish a standard against which its experiments could be judged it introduced this evidence. Since American Cyanamid stood on its filing date as showing a constructive reduction to practice and did not rely on its experiments and since duPont must stand or fall depending on the results of its experiments alone, it is clear the results of the American Cyana-

mid experiments are not in any way relevant to the issue of duPont's success or failure. Indeed, at the pretrial stage of this case Judge Letts ruled that these experiments were not relevant for discovery purposes; and the rule as to relevancy for discovery purposes as is well known is far broader than that for admissibility at trial. This evidence, therefore, must be and is excluded.

■ Where as here the interference involves co-pending applications of adverse parties the degree or measure of proof is the preponderance of the evidence. And the finding of the Patent Office is not to be over-ruled unless the testimony produces a clear conviction that the ruling was wrong. Morgan v. Daniels, 1894, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657; Abbott v. Coe, 1939, 71 App.D.C. 195, 109 F.2d 449. Although the Court does not necessarily agree with the Board that to establish practical utility—if that is what it meant—one must show that his process will be commercially successful, it does find as a fact that although duPont was the first to conceive the invention it did not reduce it to practice before July 17, 1943, the filing date of American Cyanamid. The Court also finds as a fact that duPont did not show reasonable diligence (after this date) in reducing its invention to practice as the law requires. The award, therefore, of priority to American Cyanamid by the Board of Interference Examiners is affirmed. The defendant Monsanto has a cross-licensing agreement with the plaintiff duPont and took no active part in the trial except to urge that the Board erred in using, as it contended it did, commercial success as a test in determining reduction to practice.

For a successful reduction to practice it would appear seven requirements must be satisfied by the experiment, according to one authority in the field:[1]

"1. It must have taken place in the United States.

"2. It must have been made by the inventor or some one authorized

1. Interference Law and Practice, C. W. Rivise and A. D. Caesar, Vol. 1, Sec. 132 (1940).

to do so either by the inventor or one who acquired rights.

"3. The invention must have been embodied in a physical or tangible form.

"4. The physical embodiment must show every essential feature of the invention as defined in the count of the interference.

"5. It must demonstrate the practicability or utility of the invention.

"6. The reduction to practice must have been appreciated by the inventor at the time it was made.

"7. The fact that the reduction took place must be corroborated in point of time."

DuPont failed to satisfy the fourth, fifth and sixth requirements.

On page 24 of its opinion the Board concluded "That the experiments of Exhibits 4 and 37, carried out in January 1942 by Verner and Schweitzer, are within the scope of the count and that the product was adequately identified as melamine." However, on page 26 it said:

"Mere demonstration that melamine could be produced from urea and ammonia would not complete the invention Loder had in mind; the process must also be of practical utility and this utility would be measured by its economic feasibility."

It laid much emphasis on the fact that Loder ultimately intended to develop a process that would be commercially successful in the highly competitive chemical market. This, however, would seem to be the goal of every inventor and here is where difficulty with what has been called the burden of proof undoubtedly has arisen. Loder's primary purpose was to produce melamine from urea and ammonia. Before a process can be said to have been reduced to practice, common sense, apart from anything else, would seem to dictate it must have demonstrated its practicability or utility. *This does not mean*, however, that one must demonstrate commercial success or usage. Hildreth v. Mastoras, 1921, 257 U.S. 27, 42

S.Ct. 20, 66 L.Ed. 112; Boucher Inventions v. Sola Electric Co., supra.

Defendant American Cyanamid relies on Coffin v. Ogden, 1872, 18 Wall 120, 85 U.S. 120, 21 L.Ed. 821 and Larsen v. Marzall, 1952, 90 U.S.App.D.C. 260, 195 F.2d 200, to support what appears to be the Board's ruling that the success of Loder's process must be measured by the ultimate goal of a commercially successful process. In these cases and in others cited by the defendant the courts did consider the purpose behind or the ultimate use of the invention. However, in them, *products* were involved and not a *process* as in the instant case. A product must be tested to establish whether or not it will produce new results, for a new product which has no utility involves no element of invention.

"A process is reduced to practice when it is successfully performed. A machine is reduced to practice when it is assembled, adjusted and used. A manufacture is reduced to practice when it is completely manufactured. A composition of matter is reduced to practice when it is completely composed." Corona Cord Tire Co. v. Dovan, Chemical Corporation, 276 U.S. 358, at page 383, 48 S.Ct. 380, 387, 72 L.Ed. 610.

It is the plaintiffs' contention that the laboratory experiments were sufficient to test the invention feature of the process and that commercial production was not necessary to constitute reduction to practice. With this the Court agrees, nor does it conclude that despite the talk of a commercially successful process that that was the test applied. Loder's failure lies in the fact that performance was spotty and sporadic. It was up; it was down. It was good; it was bad; it was indifferent—all in a search for novelty in the development of a process for the production of that which was old and well known. He knew that melamine could be produced from urea and ammonia. What he did not know was whether or not the experimental process upon which he was engaged would ulti-

mately develop into one of practical utility.

"Reduction to practice must produce something of practical use, coupled with a knowledge, preferably by actual trial, that the thing will work practically for the intended purpose. The conception may give rational hopes of future fulfilment of the purpose at which it aims, but if, as a matter of practice, it falls short of success, it is not a sufficient reduction to practice. Complete invention amounts to demonstration. When, as in this case, it had not quite passed beyond experiment, and had not quite attained certainty, and had fallen short of demonstrating the capacity of the invention to produce the desired result, the invention itself was still inchoate. These parties sought certainty, but they had not attained certainty beyond all conjecture, which certainty the law requires." Sherwood v. Drewson, 29 App.D.C. 161, at page 173 (1907).

And this rule is applicable to process invention as well as to machine inventions. The case cited above involved a process invention.

The problem here involved is the suitability of the process alleged to be invented for the purpose of producing melamine. The invention lies in the means and not in the result and, therefore, reduction to practice must demonstrate the practicality of the means.

If it be assumed that Loder's only purpose was to find a new source of melamine and more particularly a source within the ammonia department of the duPont company, it is apparent that, admitting this to be so, he has not met the test of reduction to practice.

The three experiments on which duPont relied before the Patent Office were performed on January 26, 1942 and February 23, 1943. The first is reported in plaintiffs' exhibits 8–3 and 8–35; the second in exhibits 8–4 and 8–37; and the third in exhibit 8–61. The first and second experiments are summarized in exhibits 8–48 and 8–49 respectively. DuPont in this connection relies heavily on the case of Corona Cord Tire Co. v. Dovan Chemical Corporation, supra, which held that laboratory experiments may be sufficient evidence of a reduction to practice and that commercial use need not be shown. Certainly there can be no quarrel with this case but what is apparently overlooked is the fact that the court categorically stated that "A process is reduced to practice when it is *successfully* performed." (Italics supplied.) Corona Cord Tire Co. v. Dovan Chemical Corporation, supra. This is the fatal hiatus in Loder's claim, and other courts including our own Court of Appeals have held that "complete invention amounts to demonstration."[2] In other words, there is not a single experiment, or all of them in the aggregate, which would indicate that Loder had successfully demonstrated a successful process designed to achieve the result sought. And this not necessarily from the viewpoint of economical feasibility or commercial success or anything other than whether it can be said to teach anything to those skilled in the same field and operating in the same art. So, here, although the experiments conducted by duPont in January of 1942 establish conception, they do not, and it is so held, establish a reduction to practice since at this time duPont could not "duplicate the production and teach the public how to duplicate it". Electro-Metallurgical Co. v. Krupp Nirosta Co., D.C., 33 F.Supp. 324, 328, affirmed, 3 Cir., 122 F.2d 314. These experiments were contaminated with copper. The temperatures and pressures used were not repeated, as duPont in subsequent experiments tried various combinations of temperature and pressure in an effort to find the right one. Indeed, three types of apparatus were used in an effort to eliminate the various and disconcerting problems the experimental

2. Hunter v. Stikeman, 1898, 13 App.D.C. 214; Sherwood v. Drewson, 1907, 29 App.D.C. 161.

reports indicate were encountered. At the end of all these experiments in April we find the following admission by Schweitzer, in plaintiffs' exhibit 8–124:

"Since it does not now appear that a process can be demonstrated in the equipment at hand, a highly idealized practice will be submitted for cost study."

In a letter dated April 14, 1942, plaintiffs' exhibit 8–125, we find Schweitzer again speaking, this time in terms of possibilities:

"Scouting work on the synthesis of melamine from urea has reached a stage where it seems advisable to obtain a cost analysis on a highly idealized process possibility."

On January 8, 1943, plaintiffs' exhibit 8–146, Loder observes:

"I wonder if melamine synthesis from $CO_2$ and $NH_3$ or from urea might be worth a concerted drive in the near future."

In Mathieson Alkali Works v. Crowley, 1943, 78 U.S.App.D.C. 163, 138 F.2d 281, the Court, after reviewing similar admissions that the experiments revealed only possibilities which justified further study, held that the invention had not been reduced to practice.

Extremely damaging also is the testimony of the expert, Dr. Murray, who critically examined the laboratory reports of experiments 8–62 and 8–104, 8–35, and 8–37, and as to each concluded that the practical utility of the process had not been demonstrated. In experiments 8–35 and 8–37 contamination with copper was encountered. The product obtained in 8–35 was not pure melamine, and yet the percentage yield of the reaction was only 37.8% based on Equation II. In the experiment 8–62 and 8–104 a good yield of 57.2% was obtained. However, the laboratory report shows that a great deal of mechanical trouble was encountered with the apparatus used. The fact that the yield on the previous day was only 23.8% (exhibit 8–61) and that on the subsequent day the report shows "no appreciable reaction had occurred" (exhibit 8–63) clearly indicates that duPont had not reduced the invention to practice. The few relatively successful experiments relied upon by duPont were separated by many months, were conducted with various types of apparatus and were run off under varying conditions of temperatures and pressures. It is clear that duPont could not demonstrate a successful process.

Nevertheless, having been the first to conceive the invention but last to reduce it to practice, duPont might still have been awarded priority if it could have shown reasonable diligence from a time *immediately* prior to when the senior party, American Cyanamid, entered the field on July 17, 1943 to the time when duPont constructively reduced the invention to practice on its filing date of September 28, 1943. But the rule is clear that a junior party must show diligence from a time immediately prior to the senior party's entry into the field. Section 102(g) of the Patent Act of 1952 in no way changes or abrogates this rule.

McAlevy completed his search of the prior art on June 16, 1943. This activity, however, of duPont's does not fall within the critical period immediately prior to July 17, 1943. The rough typewritten draft of the application was completed on July 27, 1943, and a short time before this date McAlevy had prepared a handwritten draft. However, there was no evidence that he had been working on it either on or immediately prior to July 17. On very similar facts the Court in Scharmann v. Kassel, 1950, 179 F.2d 991, 37 C.C.P.A., Patents, 903, held that the junior party had not been diligent. But even assuming that duPont had been diligent in the critical period immediately prior to July 17, it was not diligent, and the Court so holds, in preparing a final application ready for filing. McAlevy's typewritten draft was sent out for revision on July 28 and was not returned until some time after September 20, 1943. The fact that it took eight weeks for this draft to be revised indicates lack of diligence. DuPont sought to explain the delay by contending that

their patent department was shorthanded because of the death of a Mr. Gawthrop, the former director of the patent section of the ammonia department, and the resignation from that department of a Mr. Kirkwood. However, Mr. Gawthrop died at the end of March in 1943 and Mr. Kirkwood left in April of that year; that is, three and four months before July 17. Since Mr. Gawthrop apparently had not been very active before his death and since Mr. McAlevy replaced Mr. Kirkwood, the number of active employees in the patent section remained the same. DuPont also referred to the compelling requirements of their war work, but no evidence was introduced showing that the war work, if it did, prevented a more diligent revision of the application draft.

Finding no reason for disturbing the award of priority to American Cyanamid granted by the Board of Interference Examiners, judgment will, as a consequence, be entered for the defendants. Counsel will prepare tentative findings of fact and proper order.