**EASTMAN KODAK COMPANY**

v.

**E. I. DuPONT de NEMOURS & COMPANY, Inc.**

**Civ. A. No. 6038.**

United States District Court
E. D. Tennessee, N. D.

Jan. 19, 1968.

Francis T. Carr and Douglas G. Brace, New York City, Jackson C. Kramer, Knoxville, Tenn., George W. Petersen, Rochester, N. Y., for plaintiff.

Dexter N. Shaw, Gordon S. Rogers, Philadelphia, Pa., J. W. Baker, Knoxville, Tenn., C. Harold Herr, J. M. Castle, Jr., Wilmington, Del., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Eastman Kodak Company is the assignee of the U. S. Patent Application S.N. 75,396 filed on December 12, 1960 by Dyer, as well as a predecessor patent application S.N. 400,544 of Dyer filed on December 28, 1953.

E. I. du Pont de Nemours & Company, Inc. is the assignee of U. S. Patent No. 2,985,995 granted on May 31, 1961 based upon application S.N. 68,130 filed on November 8, 1960 by Bunting and Nelson which claims the benefit of the filing date of an earlier application S.N. 752,-451 filed on August 1, 1958.

This action stems from patent interference No. 93,581 conducted in the U. S. Patent Office. The claims involved in the proceeding are taken from defendant's Patent No. 2,985,995.[1]

The interference in the Patent Office was concluded and priority of invention was awarded defendant's predecessor, W. W. Bunting, Jr., et al.

Plaintiff filed this action under 35 U.S.C. § 146 to obtain a judicial review of the decision of the Board of Patent Interferences in Interference No. 93,581.

The pertinent part of the Act provides that the "record in the Patent Office shall be admitted on motion of either party * * * and the further cross-examination of the witnesses as the court imposes, without prejudice to the right of the parties to take further testimony." Plaintiff is thus entitled to a trial de novo of the issues involved in the interference.

In this proceeding, plaintiff seeks to have this Court award to it priority of invention with respect to the counts or

1. "Claim 1 (Count 1): A compact interlaced multifilament textile yarn essentially consisting of closely adjacent continuous filaments free from ring-like or other filament loops, the filaments being randomly intermingled with adjacent filaments and groups of filaments along the length of the yarn to maintain the unity of the yarn by frictional constraint between the filaments, the yarn having a coherency factor of at least 2.5 when tested in the absence of adhesive and at zero yarn bundle twist by the hook-drop test.

Claim 8 (Count 2): A compact interlaced multifilament textile yard essentially consisting of closely adjacent continuous filaments free from ring-like or other filament loops, the filaments being randomly intermingled with adjacent filaments and groups of filaments along the length of the yarn, the intermingling being of sufficient frequency to provide a coherency factor of about 5 to 100 when tested in the absence of adhesive and at zero bundle twist by the hook-drop test.

Claim 15 (Count 3): A compact interlaced plied yarn, as defined in claim 1 and further characterized by consisting of a plurality of interlaced plies of multifilament yarn bundles.

Claim 12 (Count 4): A compact interlaced multifilament textile yarn as defined in claim 8 which has substantially zero bundle twist.

Claim 14 (Count 5): A compact interlaced mutifilament textile yarn as defined in claim 8 wherein the filaments are composed of synthetic organic filamentary material.

Claim 11 (Count 6): A compact interlaced multifilament textile yarn as defined in claim 8 which has bundle twist." (The interference also involved claims 26–27 and 31–34 of the Dyer application Serial No. 75,396 which differ from the above quoted claims in the last phrase thereof where "by *the* hook-drop test" reads "by *a* hook-drop test.")

claims involved, notwithstanding the adverse decision of the Patent Office. Plaintiff also seeks an order to the Commissioner of Patents directing him to issue to the plaintiff a patent containing as claims the counts at issue.

A statement of the subject matter involved in the Patent Office proceeding and the respective contentions of the parties will be helpful to an understanding of the problems presented by the motion.

The subject matter of the counts is a textile yarn product comprised of continuous multifilaments which are entangled with one another along the length of the yarn, the filaments being essentially free from ring-like or other filament loops, and the yarn having a so-called "coherency factor" of a given value. The coherency factor is measured in accordance with a test specially devised by Bunting and Nelson (hook-drop test) and described in the patent. In all but one of the counts, the yarn may be twisted. Count 4 requires that there be no twist. Count 6 affirmatively requires a twist.

It is the theory of plaintiff that in 1952 Richard Dyer, plaintiff's assignor, was requested to make a so-called novelty yarn which was intended to be used to weave a novelty fabric. Such fabrics are those having unusual surface effects of one kind or another. Dyer thereupon devised a method and apparatus for making such a yarn, which plaintiff calls an intermittently lofted yarn (ILY). A lofted yarn is one having a relatively large bulk. It is entangled but it has a multitude of filament loops along its surface which make it bulky. It was previously known to make such lofted yarn by introducing a bundle of continuous multifilaments of spun yarn to an air jet, the jet serving to entangle the multifilaments one with another, and withdrawing such yarn therefrom at a rate which was less than the rate of feed.

An intermittently lofted yarn (ILY) is one in which there are distinct segments of yarn which is both entangled and lofted alternating with distinct segments of entangled yarn which is not lofted and free of filament loops. The process Dyer employed in making ILY yarn was to utilize existing lofting equipment by which yarn was fed through an air jet at a greater rate than it was withdrawn therefrom, but Dyer modified this apparatus to alter the relative rates of in-put and take-up yarn speeds by periodically reducing the in-put yarn speed so as to equal the take-up yarn speed and concurrently applying tension on the yarn as it passed through the jet. This equalization of yarn speeds and application of tension produced the periodic entangled non-bulked loop-free segments of the yarn.

The yarn in question was shipped to and made into a novelty fabric by J. P. Stevens & Company, Inc. in Greensboro, North Carolina. No skeins or cones of such yarn are extant. But large samples, called head-ends, of this fabric were located, and individual pieces of the yarn removed for examination. Plaintiff says that the examination confirmed the fact that the novelty yarn made in 1952 by Dyer was intermittently lofted, and that the non-lofted segments of the yarn correspond fully to one or more of the counts at issue.

In 1953, Dyer filed a patent application, S.N. 400,544, describing the apparatus and method he had previously employed and the products made thereby, together with various modifications in the process to make other products, with or without bulk sections.

J. P. Stevens & Company, Inc. did not commercialize the novelty fabrics made with the Dyer 1952 yarns, but commercial interest was later generated in novelty fabrics in 1956. Dyer again prepared intermittently lofted yarns for use therein. In this instance and because a substantial market was anticipated, special equipment was purchased to enable these yarns to be made. In that operation, continuous multifilament yarn was again fed through an air jet and was removed from the air jet by means of a "twister", which is a device for winding the yarn

on a cone and at the same time imparting some degree of twist to the yarn. In the particular apparatus employed by Dyer in 1956, bulking (that is, lofting) was deliberately imparted to the yarn by altering the rate of feed of the yarn to the jet in such a way as to overfeed the yarn when bulking was desired and to otherwise have the yarn in-put and out-put speeds approximately the same, while at the same time maintaining tension on the yarn.

Dyer made a great variety of inter-mittently lofted novelty yarns with this apparatus. Samples of these yarns and the fabrics made therefrom are available. Analysis of the unbulked segments of the yarns made by Dyer show that they fully respond to one or more of the counts of this interference.

Plaintiff says further that in 1958, Bunting and Nelson filed their patent application describing and claiming the loop-free entangled multifilament yarn of the counts in issue, as well as the methods by which it was made; that the Bunting and Nelson patent differs from the ILY yarn only by the absence of lofted segments.

In 1960, Bunting and Nelson filed a continuation in part application which resulted in Patent No. '995. The process claims were made the subject of a sepa-rate application which has since matured into patent No. 3,110,151.

A few weeks following the filing by Bunting and Nelson of their second ap-plication, Dyer filed Application S.N. 75,396, which is a continuation in part of S.N. 400,544.

Following the issuance of the Bunting and Nelson patent No. '995, Dyer copied certain of the claims thereof and pro-voked the interference, which is the sub-ject matter of this suit.

After the period for taking proof had ended in the interference proceeding in the Patent Office, plaintiff discovered the head-end samples of novelty fabric made by J. P. Stevens in 1952. Upon obtaining the fabric samples, removing the yarn therefrom and testing the same, plaintiff claims to have determined that the ILY yarn made by Dyer in 1952 came within the scope of the counts. Plaintiff then petitioned the Board of Patent Interferences to reopen the period for taking testimony to enable it to take testimony with respect to Dyer's 1952 work. The Board denied the petition.

Plaintiff insists that its only recourse was to attempt to prevail upon the Board of Patent Interferences to accord it the priority benefit of Dyer's 1953 applica-tion of the invention of the counts, and that it was entitled to have the tangible (1952) evidence to support its claim to priority.

Plaintiff contends further that the very process and the very apparatus described in the 1953 application were used in the 1952 work. That the fact that the 1952 yarn actually made by the process with the apparatus described in the 1953 application had a coherency value as required by the counts can be proved, even though the tests therefor were not devised by the defendant until 1958 and hence Dyer could neither have known of it in 1952 nor described it in his 1953 application S.N. 400,544.

Plaintiff contends that the 1956 work of Dyer in again making ILY yarn is largely corroborative of the previous work done in 1952 by the same man, but evidence thereof was not presented to the Patent Office.

Plaintiff did not deem the 1956 work as an evidentiary matter standing alone to support Dyer's entitlement to his 1953 application.

The Board held that the 1953 Dyer application S.N. 400,544 did not disclose an embodiment of the invention repre-sented by one or more of the counts (claims).

### Issues

The first issue on the merits is who, as between Dyer and Bunting and Nelson, first possessed the invention of the yarn that is dealt with in the interference count.

Plaintiff claims that it is entitled to rely on either an actual reduction to

practice or the benefit of Dyer's 1953 application, or both, as there is no requirement that plaintiff must make an election.

If it is decided that Dyer first possessed the invention, the second issue may be reached and that is whether plaintiff's applicant, Dyer, is entitled to a patent.

The issue on the motion is whether plaintiff is entitled to present evidence regarding the 1952 yarn and also evidence regarding the 1956 yarn.

Plaintiff contends that it is entitled to introduce the 1952 yarn and related authenticating documents (1) to prove an actual reduction to practice of the invention by Dyer in 1952, (2) to aid the Court in understanding the technology and the precise relationship between Dyer's 1952 work and the description thereof in his 1953 parent application, and (3) to support plaintiff's contention that by following the disclosure of the parent application, "one inherently produces the yarn having the characteristics required by the interference counts."

Plaintiff further contends that the observation and examination of the actual yarn made by Dyer in 1952 will materially assist this Court in understanding the problems involved in the action. Plaintiff claims that the yarn was not available until after the time for proof in the Patent Office proceeding had expired. The Board of Patent Examiners refused to extend the time for the introduction of proof.

It is claimed that the purpose for the introduction of evidence regarding the 1956 yarn is to corroborate plaintiff's contention that Dyer did in fact, before Bunting and Nelson, possess the invention as manifested by his 1952 yarn and his 1953 application. It is insisted that evidence relating to the 1956 yarn is relevant and competent on this issue. Plaintiff says: that Dyer's 1952 yarn was made on laboratory scale apparatus; that the yarn or process is described in his 1953 parent application and the drawing of the apparatus used appears in his

1953 application as Figure 8 and in his 1952 contemporaneous report; that the 1956 yarn was made on substantially different apparatus built to larger commercial scale, although capable of performing the same essential process steps; and that the apparatus, and the specific yarns made therewith in 1956 are not described in the parent application. It is insisted that evidence as to the 1956 work is competent to show that the 1952 work was not abandoned and did not go unappreciated.

Rule 43 F.R.Civ.P. provides that the statute or rule which favors the reception of evidence governs its introduction, thus indicating an intent that, where possible, evidence should be admitted. The exclusionary rule of law relied upon by defendant is derived from decisions refusing to admit evidence under R.S. § 4915, which is the predecessor of Title 35 U.S.C. Section 146, because of "bad faith, fraud or gross negligence." Included in the gross negligence category is evidence that was available at the time of the interference proceeding.

It is claimed that the affidavits of Messrs. Carr, Brace, Dietrich and Cranford show that evidence relating to the 1952 yarn was not available until March, 1966, or until after the time for introduction of proof before the Board of Patent Interferences.

A suit under Section 146 is treated as a trial de novo before a court sitting in equity. The statute provides that a suit is available to a party dissatisfied with the decision of the Board of Patent Interferences as of right, and expressly provides for additional evidence, unless the party seeking to introduce the additional evidence is found guilty of bad faith, fraud or gross negligence. Nichols v. Minnesota Mining and Manufacturing Company, 109 F.2d 162 (C.A. 4, 1940); Knutson v. Gallsworthy, 82 U.S.App.D.C. 304, 164 F.2d 497 (D.C.Cir., 1947); Wright v. Runge, D.C., 31 F.Supp. 844 (1939); Shell Development Co. v. Pure Oil Company, D.C., 111 F.Supp. 197 (1953); E. I. DuPont de Nemours & Co.

v. American Cyanamid Company, D.C., 120 F.Supp. 697 (1954).

Plaintiff says that the Patent Board's refusal to reopen the testimony period to permit plaintiff to introduce additional evidence was unjustified.

Plaintiff says further that it advised the Board of the facts regarding the newly discovered 1952 yarn and cited the cases of Serio v. Badger Mutual Life Insurance Company, 266 F.2d 418 (C.A. 5, 1959) and Bowles v. Six States Coal Corp., 64 F.Supp. 651 (W.D.Pa.1946).

■ A federal court has the power to reverse and remand, where an administrative agency erroneously excludes evidence. Donnelly Garment Company v. N.L.R.B., 123 F.2d 215, 224. (C.A. 8, 1941); N.L.R.B. v. Capital Fish Company, 294 F.2d 868 (C.A. 5, 1961).

Defendant says that plaintiff must rely solely on the disclosures of the Dyer 1953 application and that evidence with respect to what was done earlier in 1952 or later in 1956 is inadmissible to supply deficiencies in the disclosure of that application.

Defendant says further that the evidence which plaintiff seeks to introduce was not newly discovered evidence but was available to it during the time it was entitled to take testimony in the Patent Office. Defendant likewise says that plaintiff admitted at the September 15, 1967 hearing that it had full knowledge of the 1956 work while the interference was pending and that it elected to withhold it from the Patent Office. Also, plaintiff after review and consideration of the nature of the 1952 work during the testimony period chose not to develop it and thus elected to withhold it from the Patent Office. That in any event, plaintiff failed to exercise diligence.

■ Ordinarily, evidence will not be received as to what was intended by the disclosure of a pending application, but the disclosure must speak for itself. Application of Rogoff, 94 F.Supp. 377 (D.C. M.D.Pa., 1950); Application of Smyth, 189 F.2d 982, 989 (C.C.Pa., 1951).

Defendant says the primary issue in this action is whether, pursuant to the provisions of 35 U.S.C. § 146, plaintiff is entitled to a judgment of the Court authorizing the Commissioner to issue a patent to plaintiff's applicant, Dyer. In order for plaintiff to obtain a valid patent, Dyer must be accorded the benefit of the filing date of his 1953 application. Therefore, the sole basis for the grant of such an order must be found in the disclosure of Dyer's 1953 application and neither the evidence of the 1952 work nor of the 1956 work can provide any basis for granting such order.

■ Defendant says that plaintiff by seeking to introduce evidence of Dyer's 1956 work is attempting to establish nunc pro tunc that the 1953 application was a constructive reduction to practice of the invention. This, plaintiff cannot do. Heard v. Burton, et al., 51 C.C.P.A. 1502, 333 F.2d 239.

Defendant says that the evidence of the 1952 and 1956 work was available to plaintiff but was withheld from the Patent Office and is inadmissible. Heston et al. v. Kuhlke, et al., 81 F.Supp. 913 (D.C.N.D.Ohio, 1948); Etten et al. v. Kauffman, et al., 32 F.Supp. 186, 187 (D.C.W.D.Pa., 1940).

Defendant says further that since the Patent Office on April 29, 1965 set June 29, 1965 as the expiration of the period during which plaintiff could take testimony and subsequently extended the period to the final date of November 18, 1965, plaintiff had many months in which to investigate what evidence it deemed might be pertinent and decide what evidence, if any, it wished to present to the Patent Office. That if plaintiff had investigated the 1952 work at Stevens and had advised the Patent Office, a further extension of the testimony period could have been obtained. That from October 5, 1965 through the period to November 18, 1965, and all the way to March 17, 1966, plaintiff did nothing about following up the request to Dietrich to find out if he had obtained a sample

order to confirm the fact that the fabric had been woven at Carter.

Dietrich showed plaintiff a so-called morgue sample of the fabric and an original sample order to confirm the fact that the fabric had been woven at Carter on March 25, 1965. On March 17, 1966, five months after the request of October 4, 1965, plaintiff made inquiry of Dietrich's office as to whether a larger piece of the fabric had been located and was advised by Dietrich's secretary that she believed a sample of the fabric had been located. On March 25, Dietrich advised plaintiff that the fabric had been located. The fabric sample was delivered to plaintiff on March 29, 1966.

On June 13, 1966, plaintiff filed a motion to reopen the testimony period. Defendant points out that from October 5, 1965 through the period to November 19, 1965, when plaintiff's right to take testimony expired, and all the way to March 17, 1966, plaintiff did nothing about following up the request to Dietrich. Then on March 17, just three days after plaintiff filed a reply to defendant's petition to the Commissioner, and when it must have become evident to plaintiff that there was a danger of plaintiff losing the interference on the basis of defendant's petition unless something was done, plaintiff finally called Dietrich. Defendant's request for reconsideration was still pending and the danger of plaintiff losing the interference on the basis thereof still existed, when plaintiff on June 13, 1966 filed its motion to reopen.

It is said that the affidavits are completely silent as to when Dietrich located the head-end fabric and the documents relating thereto. All that is said in Dietrich's affidavit is that these items were found subsequently, that is subsequent to the meeting of October 5, 1965.

Defendant contends that unless plaintiff can demonstrate to the satisfaction of the Court that the Patent Office abused its discretion in denying plaintiff's motion to reopen, evidence of the 1952 work is inadmissible in this proceeding. Schering Corp. v. Marzall,

Commissioner 101 F.Supp. 571 (D.C. D.C., 1951).

■ The record shows that if plaintiff had shown more diligence it probably could have secured the evidence relating to the 1952 work before the time for taking proof before the Patent Office expired. But it does not follow from this that plaintiff was grossly negligent in failing to secure such evidence. Gross negligence in the tort field is conduct which "evinces an entire want of care and raises a presumption of conscious indifference to consequences * * * an utter disregard of consequences * * *".

■ The affidavits of Carr et al. indicate that plaintiff was not guilty of gross negligence in failing to secure the evidence relating to the 1952 work and the Court so finds.

The Court further finds that plaintiff is entitled to introduce relevant evidence relating to the 1952 work in this equity proceeding under Title 35 U.S.C. § 146.

The record shows and plaintiff admits that evidence relating to the 1956 work was available to plaintiff during the proceedings in the Patent Office and that it elected not to introduce such evidence.

■ The Court, therefore, finds and concludes that since plaintiff elected not to introduce the evidence relating to the 1956 work, it cannot introduce such evidence in this proceeding. Minnesota Mining & Mfg. Co. v. General Electric Co., D.C., 167 F.Supp. 37, 40; E. I. DuPont de Nemours & Co., Inc. v. American Cyanamid Company, 120 F.Supp. 697, 700.

Consideration was given to the question of remanding the matter to the Patent Office with the direction that it receive evidence of plaintiff's 1952 work. Counsel were requested to explore this question. Supplemental briefs were filed. From an examination of the cases, the Court concludes that a remand to the Patent Office is not appropriate. Knutson v. Gallsworthy, 82 U.S.App.D.C. 304, 164 F.2d 497, 507; Monsanto Co. v. Kamp, 269 F.Supp. 818, 822.

The Court has this day passed to the Clerk an order overruling defendant's motion relating to Dyer's 1952 work and sustaining its motion relating to Dyer's 1956 work.